[No. 40772-8-II.   Division Two.   October 16, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. ALVIN L. WITHERSPOON, *Appellant*.

272

278

*Jodi R. Backlund* (of *Backlund & Mistry*), appellant.

*Deborah S. Kelly, Prosecuting Attorney*, and *Brian P. Wendt, Deputy*, for respondent.

¶1 Quinn-Brintnall, J. — A jury found Alvin Witherspoon guilty of first degree burglary and second degree robbery while armed with a deadly weapon after Witherspoon broke into the home of Becky Pittario on November 12, 2009, stole some of her property, and had a brief encounter with Pittario before fleeing the scene. RCW 9A.56.210(1), .190; RCW 9A.52.025(1). The jury also found Witherspoon guilty of witness tampering based on a jailhouse phone conversation he made to his fiancée, Violet Conklin, after his arrest. RCW 9A.72.120(1).

¶2 On appeal, Witherspoon argues that we should reverse his convictions because (1) his constitutional right to a unanimous jury verdict was violated when the State failed to ask for a unanimity instruction related to alternative means of committing the witness tampering charge, (2) the trial court violated the appearance of fairness doctrine, (3) defense counsel ineffectively represented Witherspoon by failing to request a jury instruction on a lesser included offense and by representing him despite a conflict of interest, (4) the State failed to include specific facts in the charging documents alleging that he used or threatened force in the commission of a robbery, (5) the State failed to establish the corpus delicti of robbery, and (6) the State failed to prove Witherspoon's robbery conviction by sufficient evidence.

¶3 We affirm Witherspoon's convictions.

¶4 Witherspoon also challenges his persistent offender life sentence, arguing that (7A) the trial court violated the appearance of fairness doctrine at sentencing; (7B) his life sentence violates the Eighth Amendment and article I, section 14 of the Washington State Constitution; (7C) finding the existence of his prior convictions by a preponderance of the evidence violated his right to equal protection under the law; (7D) the trial court violated his Sixth Amendment rights in finding by a preponderance of the evidence that the State met its burden of establishing the existence of two prior "most serious offense" convictions for purposes of Washington's Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, RCW 9.94A.570; and (7E) the trial court violated his state due process right by finding his prior convictions were proved by a preponderance of the evidence.

¶5 In my view, the trial court violated Witherspoon's Sixth Amendment rights by classifying him as a persistent offender, a fact-finding function historically left to the jury, and the trial court violated Witherspoon's state due process right by finding his prior convictions were proved by a

preponderance of the evidence.[1] Accordingly, I would vacate Witherspoon's sentence for purposes of the POAA and remand for submission of his POAA status to a jury to determine whether the State has proved his prior two most serious offense convictions beyond a reasonable doubt.

## FACTS

BACKGROUND

¶6 On November 12, 2009, Witherspoon and Conklin went for a drive and ended up at Pittario's home. The parties do not dispute that Witherspoon broke into Pittario's home and stole some of her belongings. While Witherspoon was still on the property, Pittario drove up to her house, parked next to Witherspoon's car, and saw Conklin in the passenger seat of Witherspoon's vehicle. Pittario exited her car and saw Witherspoon come from around the side of her house, walking fast. He then asked her about an address, got in the car, and drove away.

¶7 During the encounter between Witherspoon and Pittario, Witherspoon held one or both hands behind his back. At trial, Pittario testified that she asked Witherspoon what he had behind his back, and he said, "A pistol." Report of Proceedings (RP) (Apr. 12, 2010) at 23. Conklin testified that Pittario asked what was behind Witherspoon's back and Witherspoon said, "[N]othing." RP (Apr. 13, 2010) at 57. Witherspoon said Pittario did not ask about his hands.

¶8 As Witherspoon drove away, Pittario noticed property she thought was hers in the back of Witherspoon's car. Pittario followed Witherspoon in her own car while on the phone with 911 as Witherspoon fled the scene in excess of 85 MPH. Later that day, police arrested Witherspoon and Conklin at his trailer and obtained a search warrant. The

---

[1] Although a majority of the panel agrees that Witherspoon's convictions should be affirmed, my colleagues do not share my views on the POAA. Accordingly, Parts 7.D and 7.E of this lead opinion do not represent the majority opinion as to Witherspoon's sentence.

police found multiple items belonging to Pittario, including jewelry and compact discs.

¶9 After his arrest, Witherspoon called Conklin from the jail to persuade her to stop talking with law enforcement and to lie about what had occurred at Pittario's residence. The jail recorded this conversation.

PROCEDURE

¶10 The State charged Witherspoon with second degree robbery, residential burglary, and witness tampering. During trial, the State played a recorded jail phone call between Witherspoon and Conklin. During the phone call, Witherspoon told Conklin, "I don't want you to talk to them no more . . . [t]o the Sheriff . . . I don't know, as long as I saved your ass, that's all that matters okay? I mean, I can do this, you can't." Ex. 40, at 3-4. In the same phone call, Witherspoon also told Conklin to talk to a man named Burl:[2]

[Witherspoon]: You can tell Burl that what it was is that we were on our way back, okay, from my grandma's, which we never even got out there. We never even found it. I mean, we had the right idea where, where it was at but we never was [sic] able to locate her. And um, we were coming back and uh we picked up that, what, what was it, Jesse or James or something?

[Conklin]: Yeah.

[Witherspoon]: And uh, you know um, I'm thinking he was about 45. He had a, he was about my height and had a, like a rusty, rusty color hair. Honey?

[Conklin]: Yeah.

[Witherspoon]: And uh, so anyway, and uh, he mentioned uh that you know, he needed, you know, a ride. And I, I, I [sic] was much obliged to give it to him. And he gave me 15, he gave us $15. . . .

. . . .

---

[2] Witherspoon did not call Burl as a defense witness.

[Witherspoon]: And uh, uh, and then uh so I dropped him off up there, waited for him because he said he needed to get his bag and a couple pillows. And uh, he dropped the bag out. Oh, and a couple of those fucking shoe, shoe boxes or whatever they were. He brings them out. You know, I don't think nothing of it. . . . And uh, I drive fucking away. I hear a car pull up. So I, you know, you know you saw it too and I turned around. And I didn't, what did I say to the lady?

[Conklin]: She told the cops that you told her that you had a pistol.

. . . .

[Witherspoon]: . . . I figured well okay, well obviously you know, what this guy's doing, either a burglary or he's taking all his girlfriend's stuff. So, soon as we got home, you know, I decided to put stuff in the trailer, and then shortly after I'm putting stuff in the trailer the Sheriffs show up. So then I freak up [sic]. . . . I put the stuff under my bed.

Ex. 40, at 4-6.

¶11 After the State rested, defense counsel moved to dismiss the robbery charge for insufficient evidence, arguing that the State had not proved that Witherspoon used or threatened the use of force or fear during the encounter with Pittario. The trial court denied the motion. The trial court also denied Witherspoon's motion to dismiss the charge of witness tampering after Witherspoon argued there was no proof that he knew that Conklin would be a witness. The jury convicted Witherspoon on all counts. At sentencing, the trial court concluded that Witherspoon had been convicted of two prior most serious offenses and sentenced him to life in prison under the POAA. Witherspoon appeals his convictions and sentence.

## DISCUSSION

WITHERSPOON'S JUDGMENT

### 1. UNANIMOUS JURY VERDICT ON WITNESS TAMPERING

¶12 Witherspoon argues that insufficient evidence supports his witness tampering conviction, infringing on his

right to a unanimous jury. He claims that the State did not sufficiently prove that he directed Conklin to withhold information from law enforcement. Witherspoon also argues that the State failed to present evidence as to whether he attempted to induce Conklin to absent herself from an official proceeding; the State concedes this point. The State contends that the lack of a unanimity instruction was harmless because the prosecutor presented evidence of only two means of witness tampering. Because any rational trier of fact would find that Witherspoon encouraged Conklin both to withhold information from law enforcement *and* perjure herself at trial, we affirm.

¶13 There are three alternative means of committing witness tampering: attempting to induce a person to (1) testify falsely or withhold testimony, (2) absent himself or herself from an official proceeding, or (3) withhold information from a law enforcement agency. RCW 9A.72.120(1)(a)-(c). Here, the information and the jury instructions alleged all three alternatives. But the State presented evidence of only two alternatives.

¶14 In Washington, criminal defendants have a right to a unanimous jury verdict. WASH. CONST. art. I, § 21. In order to safeguard the defendant's constitutional right to a unanimous verdict as to the alleged crime, substantial evidence of each of the relied-on alternative means must be presented. *State v. Smith*, 159 Wn.2d 778, 783, 154 P.3d 873 (2007) (citing *State v. Kitchen*, 110 Wn.2d 403, 410-11, 756 P.2d 105 (1988)). Thus, to affirm a conviction where there are alternative means of committing a crime and the jury is instructed on each means, this court must find that "(1) substantial evidence must support each alternative means on which evidence or argument was presented or (2) evidence and argument must have been presented on only one means."[3] *State v. Lobe*, 140 Wn. App. 897, 905, 167 P.3d 627 (2007); *see State v. Johnson*, 132 Wn. App. 400, 410, 132 P.3d

---

[3] *State v. Rivas*, 97 Wn. App. 349, 984 P.2d 432 (1999), *review denied*, 140 Wn.2d 1013 (2000), *overruled on other grounds by Smith*, 159 Wn.2d 778, from Division

737 (2006); *State v. Rivas*, 97 Wn. App. 349, 351-52, 984 P.2d 432 (1999), *review denied*, 140 Wn.2d 1013 (2000), *overruled on other grounds by Smith*, 159 Wn.2d 778.

¶15 In *Lobe*, the State charged two counts of witness tampering and both the charging documents and jury instructions included all three alternative means. *Lobe*, 140 Wn. App. at 901-02. The State failed to provide sufficient evidence that Lobe attempted to persuade Pappas, a witness, to testify falsely (count III). *Lobe*, 140 Wn. App. at 906. The State also failed to present sufficient evidence that Lobe committed witness tampering by attempting to convince another witness, Attouf, to testify falsely or to absent herself (count IV). *Lobe*, 140 Wn. App. at 905-06. The State presented sufficient evidence that Lobe attempted to persuade Attouf to withhold information but, in closing, the State argued for the first time that Lobe ordered Attouf to absent herself from the proceedings, an unsupported alternative means. *Lobe*, 140 Wn. App. at 906. We held that the probability of jury confusion was too great to affirm the conviction for count III because the jury was also improperly instructed on count IV, for which the State advanced an alternative means not supported by sufficient evidence. *Lobe*, 140 Wn. App. at 907.

¶16 Here, the State charged Witherspoon with one count of witness tampering. Both parties concede that the State did not argue or attempt to prove that Witherspoon tried to induce Conklin to absent herself from official proceedings, one of the three alternative means. Instead, the State presented substantial evidence that Witherspoon attempted to persuade Conklin to withhold information

One and *State v. Johnson*, 132 Wn. App. 400, 132 P.3d 737 (2006), *review denied*, 159 Wn.2d 1006 (2007), from this court affirmed convictions where there was substantial evidence of only *one* of several alternative means. Notably, our Supreme Court overruled *Rivas* on the grounds that the common law definitions of "assault," when submitted as a jury instruction, do not create alternative means of committing the crime charged. *Smith*, 159 Wn.2d at 787. But the court did not address the underlying alternative means rule. And although the rule in *State v. Lobe*, 140 Wn. App. 897, 167 P.3d 627 (2007), focuses its analysis on only a single means, the essential rationale applies to cases involving substantial evidence of more than one alternative means.

from law enforcement, evidenced by his statement, "I don't want you to talk to them no more ... [t]o the Sheriff." Ex. 40, at 3-4. The State also argued that Witherspoon induced Conklin to testify falsely when he told her to tell a man named Burl a story about a hitchhiker committing a robbery.

¶17 Thus, viewed in the light most favorable to the State, the evidence leaves no doubt as to whether Witherspoon attempted to induce Conklin *both* to withhold information from law enforcement and to testify falsely. Accordingly, the State presented substantial evidence supporting both means of witness tampering argued at trial.

¶18 Because "[t]here is no danger that the jury based its guilty verdict on the unsupported alternative means" of inducing Conklin to absent herself from trial, and "there is substantial, uncontroverted evidence of the charged alternative means (here, two of three), . . . there is no danger the jury was not unanimous in finding [the defendant] guilty based on the two presented and uncontroverted alternative means." *Lobe*, 140 Wn. App. at 909 (Hunt, J., dissenting). Accordingly, a unanimity instruction was unnecessary here and Witherspoon's argument fails.

2. APPEARANCE OF FAIRNESS DOCTRINE

¶19 Next, Witherspoon argues that the trial court violated the appearance of fairness doctrine by making comments evidencing a potential bias. Witherspoon focuses on the trial judge's statements that before becoming a judge, he may have defended Witherspoon in a past, unrelated proceeding. Because of this, Witherspoon claims the judge should not have presided over his trial.

¶20 Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent, disinterested observer would conclude that the parties obtained a fair, impartial, and neutral hearing. *State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010) (citing *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995)).

" 'The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial.' " *State v. Post*, 118 Wn.2d 596, 618, 826 P.2d 172, 837 P.2d 599 (1992) (quoting *State v. Madry*, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972)). An individual must demonstrate evidence of a judge's actual or potential bias for an appearance of fairness claim to succeed. *Gamble*, 168 Wn.2d at 187-88; *State v. Dominguez*, 81 Wn. App. 325, 329, 914 P.2d 141 (1996). The Code of Judicial Conduct (CJC) and due process require judges to disqualify themselves in a proceeding in which their impartiality " 'might reasonably be questioned.' " *State v. Chamberlin*, 161 Wn.2d 30, 37, 162 P.3d 389 (2007) (quoting former CJC Canon 3(D)(1) (2002)). The test for determining whether the judge's impartiality might reasonably be questioned is an objective one. *State v. Leon*, 133 Wn. App. 810, 812, 138 P.3d 159 (2006), *review denied*, 159 Wn.2d 1022 (2007).

¶21 Prior to the start of trial, the trial court informed the parties that it recognized the name "Witherspoon":

> THE COURT: . . . I don't know this for sure but the name Witherspoon rang a bell with me, it may be 15 years ago I represented Mr. Witherspoon as a [d]efense attorney, I don't know or not, I was working with the Defender's Office.
>
> . . . .
>
> THE COURT: Does that bother anybody?
>
> . . . .
>
> [Witherspoon]: What year?
>
> THE COURT: I have no idea, just the name sounded familiar. I don't even remember what it was about, if or what it was about, but the name sounded familiar so I always disclose that that's a possibility.
>
> [Witherspoon]: Let me consult my attorney, Your Honor.
>
> . . . .
>
> THE COURT: The name sounded familiar.
>
> [Witherspoon]: Your Honor, would that have been a juvenile matter?

THE COURT: Could have been.

[Witherspoon]: Your Honor, I have objections.

THE COURT: Okay. Let's bring in our jury panel.[4]

RP (Apr. 12, 2010) at 15-16.

¶22 Here, the facts are analogous to those in *Dominguez*. In *Dominguez*, the trial judge had, in his professional capacity, once represented the defendant in a criminal proceeding and also prosecuted him in an unrelated case. 81 Wn. App. at 327. Furthermore, the defendant also claimed to have filed a lawsuit or disciplinary complaint against the judge following the case in which the judge had represented him. *Dominguez*, 81 Wn. App. at 327. The judge denied the defendant's motion to recuse because the judge remembered little about the defendant and knew nothing about the present case. *Dominguez*, 81 Wn. App. at 327. Division Three of this court held that the defendant's "bare oral assertion[s]" did not amount to a violation of the appearance of fairness doctrine. *Dominguez*, 81 Wn. App. at 329.

¶23 Assuming Witherspoon did object at trial, he fails to provide sufficient evidence to overcome the presumption that the trial court performed its functions without bias or prejudice. The record is not clear that the trial judge had actually represented Witherspoon in the past.

---

[4] The State claims that the record contains a typographical error and that Witherspoon actually said, " 'Your Honor, I have [no] objections.' " Br. of Resp't at 30 (alteration in original). The State plausibly argues that this explains the context as to why the judge answered in the affirmative and commenced the trial. But RAP 9.5(c) requires that a party file an objection to, and propose amendments to, a verbatim report of proceedings within 10 days after receipt of the report of proceedings. The State has failed to timely object. Furthermore, citing *State v. Russell*, 171 Wn.2d 118, 249 P.3d 604 (2011), the State asks this court to correct Witherspoon's statement because it contains a typographical error. However, in *Russell*, the record of proceedings said the prior and subsequent evidence of sexual misconduct showed Russell's " 'lawful disposition.' " 171 Wn.2d at 121 n.1. Our Supreme Court noted this was merely a typographical error or the prosecutor misspoke, but given the context, the State clearly meant the evidence showed Russell's *"lustful* disposition." *Russell*, 171 Wn.2d at 121 n.1. Here, in contrast, whether Witherspoon stated he did or did not have objections may affect the merits of his appearance of fairness argument. Accordingly, we address Witherspoon's claim on the merits.

Further, Witherspoon does not provide any evidence that if the trial judge previously represented him, such representation affected the present case. Viewing the evidence objectively, the trial judge's impartiality may not be reasonably questioned under these circumstances.

¶24 Accordingly, we hold that Witherspoon's appearance of fairness claim fails.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

¶25 Witherspoon contends that his counsel ineffectively represented him by failing to request an instruction for theft as a lesser included offense. Further, he claims that the trial court infringed on his right to effective assistance of counsel by not adequately inquiring into a potential conflict of interest. Because counsel's performance did not fall below an objective standard of reasonableness and the evidence does not support his contention that the trial court infringed on his right to effective assistance, these claims fail.

¶26 To demonstrate that counsel ineffectively represented him, Witherspoon must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) the deficient representation prejudiced his defense, i.e., there is a reasonable probability that but for the deficient performance, the results of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). This court allows trial counsel considerable deference and employs a strong presumption that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "To rebut this presumption, the defendant bears the burden of establishing the absence of any *'conceivable* legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

A. Failure To Request a Lesser Included Offense Instruction

¶27 Witherspoon argues it was objectively unreasonable for defense counsel to pursue an "all or nothing" strategy and that he was entitled to the lesser included offense instruction of theft because the evidence fails to show force or the threat of force. Br. of Appellant at 39. We disagree.

¶28 Both a defendant and the State have a statutory right to present to the jury a lesser included offense if all the elements of the lesser offense are necessary elements of the charged offense (the legal prong) and the evidence supports an inference that only the lesser crime was committed (the factual prong). *State v. Stevens*, 158 Wn.2d 304, 310, 143 P.3d 817 (2006); *see* RCW 10.61.006. The inclusion or exclusion of a lesser included offense is a tactical decision, for which this court grants significant latitude to defense attorneys. *Grier*, 171 Wn.2d at 39. To prevail on an ineffective assistance of counsel claim, the defendant bears the burden of establishing the absence of *any* conceivable legitimate strategy. *Grier*, 171 Wn.2d at 42.

¶29 The primary difference between theft and robbery, as charged in this case, is the use or threatened use of force.[5] Viewed in the light most favorable to Witherspoon, the conflicting testimony at trial permits a jury to rationally conclude that Witherspoon obtained Pittario's property without the use of force. Consequently, Witherspoon and his defense counsel could have believed that an all or nothing strategy was the best approach to achieve an outright acquittal on the robbery charge. *Grier*, 171 Wn.2d at 43.

---

[5] A person commits robbery when he or she "unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person." RCW 9A.56.190.

¶30 At trial, Witherspoon's counsel argued that the State had not proved beyond a reasonable doubt that Witherspoon used force. Defense counsel stated, "Witherspoon was intending to commit theft. He wanted to take Ms. Pittario's property, that's pretty obvious. . . . But, it's not robbery unless you take that property from the presence of a person by the use or threatened use of immediate force, violence or fear of injury." RP (Apr. 13, 2010) at 123-24. Because Witherspoon admitted to taking the property, if defense counsel had requested a lesser included instruction for theft, there was a strong probability that the jury would have convicted on the lesser included offense. Alternatively, defense counsel declined to request the instruction to force the jury to convict on the robbery charge requiring a finding of force. And if the jury believed the defense theory of the case, it could have acquitted Witherspoon on the robbery charge. That this strategy ultimately proved unsuccessful is immaterial. *See Grier*, 171 Wn.2d at 43. Accordingly, we hold that Witherspoon's ineffective assistance claim fails.

### B. CONFLICT OF INTEREST

¶31 Witherspoon contends that the trial court infringed on his right to effective assistance when it failed to adequately inquire into a potential conflict of interest involving defense counsel's continued representation. Again, we disagree.

¶32 If a trial court knows, or reasonably should know, of a defense attorney's potential conflict of interest, the court must conduct an inquiry to determine the nature of the conflict. *State v. Dhaliwal*, 150 Wn.2d 559, 570, 79 P.3d 432 (2003). Reversal is not required when a trial court knows of a potential conflict but fails to inquire; the defendant must show the conflict adversely affected counsel's performance. *Dhaliwal*, 150 Wn.2d at 571. This court reviews a trial court's refusal to appoint new counsel for abuse of discretion. *State v. Cross*, 156 Wn.2d 580, 607, 132 P.3d 80, *cert. denied*, 549 U.S. 1022 (2006).

¶33 Witherspoon's contention that the trial court failed to conduct an adequate inquiry is unfounded. He requested new counsel for two reasons: (1) he believed his attorney might be a defense witness on the tampering charge and (2) he expressed concern that as a "third strike case," he felt the court should appoint an independent investigator. Clerk's Papers (CP) at 27. The trial court stated that although defense counsel might be a limited witness because Conklin called him, counsel did not discuss the case with her and, thus, his credibility was not at stake. Further, the trial court expressed concern that new counsel would be a hardship on Witherspoon. As to Witherspoon's second concern, he does not provide any evidence that an investigator would have found other evidence, or that other witnesses were available to assist in his defense that were not called. Consequently, because Witherspoon does not show any conflict adversely affected counsel's performance, we hold that this ineffective assistance claim also fails.

### 4. CONSTITUTIONALLY SUFFICIENT INFORMATION

¶34 For the first time on appeal, Witherspoon argues that the second amended information was factually deficient because it did not include specific facts that Witherspoon used or threatened to use force to obtain or retain stolen property. We disagree.

¶35 Article I, section 22 of our state constitution provides, "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him." This notice is formally given in the information. *See* CrR 2.1(a)(1) (the information "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged").

¶36 A charging document must include all essential elements of a crime, statutory and nonstatutory, to adequately inform the defendant of the nature of the charges against him and allow him to prepare his defense. *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177

(1995). The information must also allege the particular facts supporting every element of the offense. *State v. Leach*, 113 Wn.2d 679, 689, 782 P.2d 552 (1989). The primary purpose of the rule is to provide the defendant with sufficient notice. *State v. Tandecki*, 153 Wn.2d 842, 846, 109 P.3d 398 (2005) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991)).

¶37 When, as here, the defendant challenges the charging document for the first time on appeal, this court liberally construes the document in favor of validity. *State v. Winings*, 126 Wn. App. 75, 84, 107 P.3d 141 (2005). This court will find the charging document sufficient if the necessary elements appear in any form or by fair construction may be found on the face of the document. *State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d 250 (2010). This court reviews the information as a whole, according to common sense and including implied facts, to determine if the accused is reasonably apprised of the elements of the crime charged. *Kjorsvik*, 117 Wn.2d at 105-08. If it does include all necessary elements, the defendant may prevail only if he can show the inartful or vague language in the charging document actually prejudiced him. *Kjorsvik*, 117 Wn.2d at 106.

¶38 Witherspoon argues that the charging document failed to include the specific conduct that formed the basis for the allegation that he used or threatened force.[6] The State charged Witherspoon with one count of second degree robbery; the information stated in relevant part,

> On or about the 12th day of November, 2009, in the County of Clallam, State of Washington, the above-named Defendant, with intent to commit theft thereof, did unlawfully take per-

---

[6] The State argues that Witherspoon waived his right to challenge the information by not requesting a bill of particulars. This is an incorrect interpretation of the law. A defendant may waive his *vagueness* challenge to a constitutionally sufficient information if he fails to request a bill of particulars. *Nonog*, 169 Wn.2d at 225 n.2; *Winings*, 126 Wn. App. at 84. But because Witherspoon's challenge is to the *constitutional sufficiency* of the information, it may be raised at any time. *See Nonog*, 169 Wn.2d at 225.

sonal property that the Defendant did not own from the person of another, to-wit: B. Pittario, or in said person's presence against said person's will by the use or threatened use of immediate force, violence, or fear of injury to said person or the property of said person or the person or property of another; contrary to Revised Code of Washington 9A.56.210(1) and 9A.56.190, a Class B felony.

CP at 21.

¶39 This information includes all the essential elements for the crime of second degree robbery. *See* RCW 9A.56.190. Witherspoon contends that because the information fails to allege all the essential facts supporting every element of second degree robbery, specifically the use or threatened use of force, it is thereby defective.

¶40 In *Winings*, the information charged second degree assault while armed with a deadly weapon and it failed to state the victim, the weapon used, or the manner in which Winings used the weapon. 126 Wn. App. at 85. Winings argued that the information was factually deficient. *Winings*, 126 Wn. App. at 85. We held that the information, though vague, was constitutionally sufficient because it alleged assault of another with a deadly weapon in violation of former RCW 9A.36.021 (2001) and included the date and location. *Winings*, 126 Wn. App. at 86.

¶41 Here, construed liberally, the information provides facts supporting each element of second degree robbery. It alleges Witherspoon did unlawfully take personal property of the victim, Pittario, by the use or threatened use of immediate force, violence, or fear of injury to said person or the property of said person. It further states that Witherspoon violated RCW 9A.56.210(1) and .190. As in *Winings*, for purposes of constitutional sufficiency, the second amended information sufficiently apprised Witherspoon of the second degree robbery charge.

5. CORPUS DELICTI

¶42 Witherspoon argues for the first time on appeal that the State failed to prove the corpus delicti of the robbery

independent of his statements made during the commission of the crime.[7] The record does not support this argument.

¶43 "Corpus delicti" means the "body of the crime" and requires the State to prove both a criminal act and a resulting loss. *See State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996). In Washington, a defendant's incriminating statements are not sufficient, standing alone, to establish that a crime took place. *Brockob*, 159 Wn.2d at 328. The State must present independent evidence corroborating the defendant's incriminating statement. *Brockob*, 159 Wn.2d at 328-29. The court may then consider the independent evidence in connection with the defendant's confession and establish the corpus delicti by a combination of the confession and the independent proof. *Aten*, 130 Wn.2d at 656. The independent evidence need not be sufficient to establish the corpus delicti beyond a reasonable doubt, or even by a preponderance of proof. *Aten*, 130 Wn.2d at 656. There must be evidence of sufficient circumstances that would support a logical and reasonable inference of the facts sought to be proved. *Aten*, 130 Wn.2d at 656.

¶44 Witherspoon's statement to Pittario that he had a pistol was made as part of the crime itself.[8] Witherspoon fails to cite legal authority for the proposition that statements made during the course of the criminal act are confessions and, thus, require independent corroboration. Further, we recently held that the corroboration requirement does not apply to incriminating statements made prior to or during the course of an offense. *State v. Zillyette*, 163 Wn. App. 124, 131 n.5, 256 P.3d 1288 (2011), *rev'd on other grounds*, 173 Wn.2d 784, 270 P.3d 589 (2012). And

---

[7] Neither party cites authority requiring a defendant to raise a corpus delicti issue at trial. Notably, the Washington Supreme Court has addressed corpus delicti arguments raised for the first time on appeal. *See, e.g., State v. Riley*, 121 Wn.2d 22, 31-32, 846 P.2d 1365 (1993).

[8] Witherspoon's statement goes to the use or threatened use of force or fear to obtain or retain possession of the property of another, elements the State must prove to convict him for robbery. *See* RCW 9A.56.190.

both Divisions One and Three of this court have explicitly refused to apply the corpus delicti rule to exclude statements made prior to or during the commission of a crime. *See State v. Dyson*, 91 Wn. App. 761, 763-64, 959 P.2d 1138 (1998); *State v. Pietrzak*, 110 Wn. App. 670, 682, 41 P.3d 1240, *review denied*, 147 Wn.2d 1013 (2002).

¶45 In *Pietrzak*, Division Three reviewed Pietrzak's precrime statements as a matter of first impression on appeal. 110 Wn. App. at 680. The State presented evidence that Pietrzak told people that he disliked the victim, Kelly Conway, and wanted to kill her. *Pietrzak*, 110 Wn. App. at 681. After Peitrzak made these statements, Conway disappeared. *Pietrzak*, 110 Wn. App. at 681. During the trial, after the State rested, Pietrzak's defense counsel unsuccessfully moved the court to dismiss the case for insufficient evidence of corpus delicti. *Pietrzak*, 110 Wn. App. at 678. The court held that Pietrzak's precrime statements were an admission of guilt that corroborated his postcrime statements and established the corpus delicti of the charged crime. *Pietrzak*, 110 Wn. App. at 682.

¶46 In *Dyson*, Division One looked to the definition of a "confession" as an "expression of guilt as to a past act" and concluded that Dyson's statements comprising negotiation and agreement for an act of prostitution were statements made as part of the crime. 91 Wn. App. at 763. The court held the corpus delicti rule did not apply because Dyson's statements did not constitute a confession. *Dyson*, 91 Wn. App. at 763-64.

¶47 Here, Witherspoon's statement that he had a pistol was part of the crime of robbery. Also, Witherspoon never "expressed guilt" at a later date about this act—no confession occurred. The corpus delicti rule does not apply in this case.[9]

---

[9] Witherspoon also raises this issue in the context of ineffective assistance of counsel. Because the corpus delicti rule is inapplicable to this case, that claim necessarily fails as well.

### 6. SUFFICIENT EVIDENCE FOR ROBBERY CONVICTION

¶48 Witherspoon argues that insufficient evidence supports his conviction for second degree robbery because the State failed to prove that he used "force or fear" while stealing from Pittario. Br. of Appellant at 27.[10] Further, Witherspoon argues that because the evidence was insufficient to prove the elements of the crime beyond a reasonable doubt, his robbery conviction violates his Fourteenth Amendment right to due process. Again, we disagree.

¶49 In considering a challenge to the sufficiency of the evidence, this court construes the evidence in the light most favorable to the jury's verdict and asks whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A defendant who challenges the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from the evidence. *Salinas*, 119 Wn.2d at 201. This court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

¶50 A person commits robbery "when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the *use or threatened use* of immediate force, violence or fear of injury to that person or his or her property or the person or property of anyone." RCW 9A.56.190 (emphasis added). Here, the jury instructions included this statutory language. Witherspoon's assertions that the instruction required the State prove actual force or fear is unfounded.

---

[10] Witherspoon also raises this issue, and only this issue, in his statement of additional grounds. RAP 10.10. We address the merits of this argument here.

¶51 There is sufficient evidence of force to support a robbery conviction if the taking of property is attended by a threatening menace, word, or gesture that would, in common experience, create an apprehension of danger and induce a person to part with her property. *State v. Shcherenkov*, 146 Wn. App. 619, 624-25, 191 P.3d 99 (2008), *review denied*, 165 Wn.2d 1037 (2009). Any force or threat, however slight, that induces the owner to part with her property is sufficient. *State v. Handburgh*, 119 Wn.2d 284, 293, 830 P.2d 641 (1992) (citing *State v. Ammlung*, 31 Wn. App. 696, 704, 644 P.2d 717 (1982)). But it is not necessary that actual fear be specifically proved, for the law will presume fear where there appears to be just ground. *State v. Redmond*, 122 Wash. 392, 393-94, 210 P. 772 (1922).

¶52 At trial, Pittario testified that she arrived home to find an unknown car in her driveway facing in the direction of the exit. When Pittario got out of her vehicle, Witherspoon came around the side of the house, walking fast, with his left hand behind his back. When Pittario asked what Witherspoon had behind his back, Witherspoon said he had a pistol. Any rational trier of fact could interpret Witherspoon's suspicious act of keeping his hands behind his back as evidence that he was deliberately implying he had a weapon. Further, the jury could have reasonably found that Witherspoon's statement that he had a pistol to be an indirect communication that he would use force if needed to retain possession of Pittario's property.

¶53 Although not overwhelming when viewed in the light most favorable to the jury's verdict, the evidence here is sufficient to prove the elements of the crime beyond a reasonable doubt. Thus, Witherspoon's contention that his robbery conviction violates his due process right fails.

¶54 Because all of Witherspoon's arguments fail, we affirm his convictions.

## 7. WITHERSPOON'S POAA SENTENCE

¶55 Witherspoon challenges his sentence, arguing that (A) the trial court violated the appearance of fairness

doctrine at sentencing; (B) his life sentence violates the Eighth Amendment and article I, section 14 of the Washington State Constitution; (C) finding the existence of his prior convictions by a preponderance of the evidence violated his right to equal protection under the law; (D) the trial court violated his Sixth Amendment rights in finding, in place of a jury, that the State met its burden of establishing the existence of two prior "most serious offense" convictions for purposes of Washington's POAA; and (E) the trial court violated Witherspoon's state due process right by finding his prior convictions were proved by a preponderance of the evidence.

A. APPEARANCE OF FAIRNESS DOCTRINE

¶56 Witherspoon contends that the trial court violated the appearance of fairness doctrine because the court announced during sentencing that it would impose a life sentence because it "trusted the prosecutor." Br. of Appellant at 48. This is an inaccurate characterization of the record. Rather, the trial court stated that it was not sure which party carried the burden of proof to establish Witherspoon's prior convictions. Specifically, the trial court stated, "I don't know what the burden is. I'll take [the prosecutor] at her word. . . . I'll take [the prosecutor] at her recitation of the law." RP (May 24, 2010) at 34-35. Witherspoon did not object at sentencing to the prosecutor's statement of law, nor does he cite legal authority to support his claim that this amounts to a violation of the appearance of fairness doctrine. See RAP 2.5(a) (an "appellate court may refuse to review any claim of error which was not raised in the trial court"). The trial court's mere reliance on the prosecutor's statement of law, without more, does not violate the appearance of fairness doctrine.

¶57 Accordingly, we hold that Witherspoon's appearance of fairness claim related to sentencing fails.

## B. Cruel and Unusual Punishment

¶58 Witherspoon alleges that his sentence violates the Eighth Amendment ban on "cruel and unusual punishment," and the Washington Constitution's article I, section 14 prohibition against "cruel punishment."

¶59 A sentence violates article I, section 14 when it is grossly disproportionate to the crime for which it is imposed. *State v. Flores*, 114 Wn. App. 218, 223, 56 P.3d 622 (2002), *review denied*, 148 Wn.2d 1025 (2003). The Washington Constitution provides greater protection than the federal constitution; thus, if the state provision is not violated, the statute violates neither constitution. *Flores*, 114 Wn. App. at 223. A punishment is grossly disproportionate if it is clearly arbitrary and shocking to the sense of justice. *State v. Smith*, 93 Wn.2d 329, 344-45, 610 P.2d 869, *cert. denied*, 449 U.S. 873 (1980). To determine whether a sentence is grossly disproportionate, this court considers the following factors: (1) the nature of the offense, (2) the legislative purpose behind the statute, (3) the punishment the defendant would have received in other jurisdictions, and (4) the punishment imposed for other offenses in the same jurisdiction. *State v. Fain*, 94 Wn.2d 387, 397, 617 P.2d 720 (1980); *Flores*, 114 Wn. App. at 223. No one factor is dispositive. *State v. Gimarelli*, 105 Wn. App. 370, 380-81, 20 P.3d 430, *review denied*, 144 Wn.2d 1014 (2001).

¶60 Witherspoon's contention that his punishment violates his rights under the Eighth Amendment to the United States Constitution and article I, section 14 of the state constitution is without merit. He argues that his current offense was "relatively minor," that the legislature did not intend for the POAA to apply to him as a "small-time offender[ ]," and that he would have received a lighter punishment in other jurisdictions. Br. of Appellant at 50.

¶61 In *State v. Rivers*, 129 Wn.2d 697, 921 P.2d 495 (1996), our Supreme Court determined that a life sentence under the POAA based on a conviction for second degree

robbery did not constitute cruel punishment. Rivers had previous convictions for two second degree robberies, attempted second degree robbery, and second degree assault. The court applied the *Fain* factors and held that because second degree robbery involves a threat of violence toward another, it is a "most serious offense." *Rivers*, 129 Wn.2d at 712-15. Further, the court concluded that the legislative purpose of the POAA was to deter criminals from committing three most serious offenses and to segregate repeat offenders from society if they do. *Rivers*, 129 Wn.2d at 713. The court in *Rivers* determined the sentence was not grossly disproportionate because other states impose sentences as severe and because in this jurisdiction the POAA punishes other serious crimes with life imprisonment without parole. 129 Wn.2d at 714.

¶62 Here, we conclude that Witherspoon's sentence is not grossly disproportionate. The first *Fain* factor, the nature of the offense, supports his sentence. Witherspoon committed second degree robbery, a crime against a person, and a most serious crime under former RCW 9.94A-.030(32)(o) (2008). The legislative purpose behind the POAA is deterrence, and given Witherspoon's criminal history of serious offenses, he has demonstrated a propensity for recidivism for which the statute requires segregation. *See State v. Thorne*, 129 Wn.2d 736, 775, 921 P.2d 514 (1996), *abrogated on other grounds by Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). As Witherspoon concedes, he would receive a similar, harsh sentence in at least six states.[11] The penalties among jurisdictions do vary, but many include life sentences for three-time offenders. *Rivers*, 129 Wn.2d at 714; *Thorne*, 129 Wn.2d at 775 ("Washington's so-called 'three strikes' law is similar to state and federal legislation throughout much of the United States.").

---

[11] Washington, Louisiana, Mississippi, and Montana require a life sentence without parole for second degree robbery when committed as a third strike. Nevada and the District of Columbia authorize this as a maximum sentence, but the sentencing judge retains discretion.

¶63 Finally, our Supreme Court has repeatedly held that a life sentence imposed after a defendant was convicted for robbery was not cruel and unusual punishment. *Rivers*, 129 Wn.2d at 714 (citing *State v. Lee*, 87 Wn.2d 932, 558 P.2d 236 (1976)); *see also State v. Manussier*, 129 Wn.2d 652, 921 P.2d 473 (1996) (upholding a life sentence where prior convictions were for second degree robbery and first degree robbery, and current conviction was for second degree robbery), *cert. denied*, 520 U.S. 1201 (1997).

¶64 Witherspoon's sentence is not disproportionate in light of the offense he committed and his criminal history; accordingly, we hold that his life sentence does not constitute cruel punishment.

C. EQUAL PROTECTION

¶65 Witherspoon argues that the POAA's classification of his prior convictions as sentencing factors rather than as additional elements of the crime violates his constitutional right to equal protection. Specifically, Witherspoon claims that under our Supreme Court's reasoning in *State v. Roswell*, 165 Wn.2d 186, 192-94, 196 P.3d 705 (2008), there is no rational basis to require that some prior convictions be proved to a jury beyond a reasonable doubt as an element of the crime, and to allow others be found by a judge by a preponderance of the evidence, as sentencing factors. We disagree.

¶66 Under both the state and federal constitutions, persons similarly situated with respect to the legitimate purpose of the law must receive like treatment. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 12; *Thorne*, 129 Wn.2d at 771. Our Supreme Court has upheld the POAA as constitutional against challenges based on equal protection principles. *Thorne*, 129 Wn.2d at 772 (holding a recidivist may be justifiably punished more severely than a first-time offender); *Manussier*, 129 Wn.2d at 674) (improved public safety is a legitimate state objective when punishing recidivists). When a statutory classification implicates physical

liberty, it is subject to rational basis scrutiny unless that classification also affects a semisuspect class. *Thorne*, 129 Wn.2d at 771. Recidivist criminals are not a suspect class. *Manussier*, 129 Wn.2d at 673. Thus, this court applies rational basis scrutiny to Witherspoon's challenge.

¶67 Under the rational basis test, a statute is constitutional if (1) the legislation applies alike to persons within a designated class, (2) reasonable grounds exist for distinguishing between those who fall within the class and those who do not, and (3) there is a rational relationship between the classification and the purpose of the legislation. *State v. Smith*, 117 Wn.2d 263, 279, 814 P.2d 652 (1991). The burden is on the party challenging the classification to show that it is purely arbitrary. *Thorne*, 129 Wn.2d at 771. Witherspoon argues that there is no rational basis to distinguish between recidivists whose prior convictions are treated as aggravators for the purposes of sentencing and other recidivists for whom a prior conviction is treated as an element of the current offense.

¶68 In *Roswell*, the defendant was charged with communication with a minor for immoral purposes, a crime elevated from a gross misdemeanor to a felony if the defendant has a prior conviction for the same crime or a felony sex offense. 165 Wn.2d at 190; RCW 9.68A.090. Our Supreme Court held that because Roswell could not be convicted of felony communication with a minor for immoral purposes without proof of the prior conviction, the prior conviction was an essential element of the crime charged and had to be proved to a jury beyond a reasonable doubt. *Roswell*, 165 Wn.2d at 194.

¶69 Here, Witherspoon argues that distinguishing between a prior conviction as a sentencing aggravator and a prior conviction as an element of a crime is arbitrary and lacks a rational basis because his prior convictions elevate the punishment for his current offense to a mandatory life sentence without parole.

¶70 But there is a rational basis for distinguishing between "persistent offenders" and "nonpersistent offenders" under the POAA. *State v. McKague*, 159 Wn. App. 489, 518-19, 246 P.3d 558 (citing *Manussier*, 129 Wn.2d at 674; *Thorne*, 129 Wn.2d at 771-72), *aff'd*, 172 Wn.2d 802, 262 P.3d 1225 (2011). The legislature did not include all recidivists under the POAA but specifically targeted the most serious, dangerous offenders. *Thorne*, 129 Wn.2d at 764. Notably, the purpose of the POAA is to improve public safety by placing the most dangerous criminals in prison and reduce the number of serious, repeat offenders by tougher sentencing. RCW 9.94A.555. And it is within the legislature's discretion to define what facts constitute elements of the crime and the penalty for that crime, even where prior convictions as an element of the crime have the singular effect of increasing punishment for recidivists. *Thorne*, 129 Wn.2d at 767.

¶71 Furthermore, both Divisions One and Three of this court have held that under the POAA there is a rational basis to distinguish between a recidivist charged with a serious felony and a person whose conduct is felonious only because of a prior conviction for a similar offense. *See State v. Langstead*, 155 Wn. App. 448, 454-57, 228 P.3d 799, *review denied*, 170 Wn.2d 1009 (2010); *State v. Williams*, 156 Wn. App. 482, 496-99, 234 P.3d 1174, *review denied*, 170 Wn.2d 1011 (2010). Thus, Witherspoon's equal protection challenge fails.

### D. DETERMINING PRIOR CONVICTIONS FOR PURPOSES OF THE POAA

¶72 Witherspoon argues that the trial court violated his Sixth Amendment jury trial rights by determining the existence of his prior convictions itself without submitting this factual issue to a jury.[12] Although our Supreme Court has repeatedly rejected the argument that the Sixth Amend-

---

[12] To reiterate, the following sections—Parts 7.D and 7.E—do not represent the majority view of the court.

ment applies to sentencing determinations under the POAA,[13] this view fails to comport with the constitutional principles elucidated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely*.[14]

¶73 Two recent United States Supreme Court opinions, *Oregon v. Ice*, 555 U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009), and *Southern Union Co. v. United States*, ___ U.S. ___, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012), cast further doubt on the constitutionality of having a trial court, rather than a jury, decide whether prior convictions are proved by a preponderance of the evidence as, *historically*, juries made this determination under recidivist statutes like the POAA. *See, e.g., State v. Furth*, 5 Wn.2d 1, 10, 104 P.2d 925 (1940) ("On a charge of being an habitual criminal, is the question of defendant's prior conviction an issue of fact to be determined by the jury? The weight of authority answers that question . . . in the affirmative.").

¶74 In *Ice*, the majority addressed whether the Sixth Amendment mandates that a jury decide if a defendant convicted of multiple offenses should be sentenced to consecutive or concurrent sentences. 555 U.S. at 163. The Supreme Court rejected the argument that a jury must

---

[13] *See, e.g., State v. Magers*, 164 Wn.2d 174, 193, 189 P.3d 126 (2008) (approving this court's holding in *State v. Ball*, 127 Wn. App. 956, 959-60, 113 P.3d 520 (2005), *review denied*, 156 Wn.2d 1018 (2006), concluding that *Blakely* has no application in sentencing under the POAA); *State v. Thiefault*, 160 Wn.2d 409, 418, 158 P.3d 580 (2007) (the State is not required to submit prior convictions to a jury and prove them beyond a reasonable doubt under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny); *State v. Smith*, 150 Wn.2d 135, 143, 75 P.3d 934 (2003) (holding that *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), expressly held that a prior conviction need not be proved to a jury and the United States Supreme Court has not held otherwise since), *cert. denied*, 541 U.S. 909 (2004).

[14] *See McKague*, 159 Wn. App. at 527 (Quinn-Brintnall, J., concurring in part and dissenting in part) ("Here, I reiterate and expand the analysis in my dissent in *State v. Rudolph*, 141 Wn. App. 59, 72, 168 P.3d 430 (2007), *review denied*, 163 Wn.2d 1045 (2008), that under *Blakely*, a trial court sitting without a jury may not constitutionally sentence a defendant to life without the possibility of parole on a class B felony that otherwise carries a maximum term of 10 years.").

decide this issue because, historically, this role fell to the trial court:

> Our application of *Apprendi*'s rule must honor the "longstanding common-law practice" in which the rule is rooted. *Cunningham* [*v. California*], 549 U. S.[ 270, 281, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007)]. The rule's animating principle is the preservation of the jury's historic role as a bulwark between the State and the accused at the trial for an alleged offense. See *Apprendi*, 530 U. S. at 477. Guided by that principle, our opinions make clear that the Sixth Amendment does not countenance legislative encroachment on the jury's traditional domain. . . .
>
> . . . .
>
> The historical record demonstrates that the jury played no role in the decision to impose sentences consecutively or concurrently. Rather, the choice rested exclusively with the judge.

*Ice*, 555 U.S. at 167-68.

¶75 In *Southern Union*, the Court was asked to determine whether *Apprendi*'s reasoning should extend to criminal fines imposed pursuant to a natural gas distributor's violation of the Resource Conservation and Recovery Act of 1976.[15] 132 S. Ct. at 2349. After an extended discussion of the traditional role juries have played in setting fines, the Court held that "requiring juries to find beyond a reasonable doubt facts that determine [a] fine's maximum amount is necessary to implement *Apprendi*'s 'animating principle.'" *S. Union*, 132 S. Ct. at 2351. As in *Ice*, the Court stressed the importance of analyzing the jury's historic role in relation to the issue at hand and, in relation to setting criminal fines, concluded that "ample historical evidence [showed] that juries routinely found facts that set the maximum amounts of fines." 132 S. Ct. at 2356.

¶76 Here, unlike with the imposition of consecutive or concurrent sentences in *Ice* but comparable to setting fines

---

[15] 42 U.S.C. § 6928(d)(2)(A).

as addressed in *Southern Union*, the State was historically required to "prove to a jury beyond a reasonable doubt that the defendant to be sentenced under a recidivist statute was the person who was previously convicted of statutorily qualifying offenses"—not the trial court. *McKague*, 159 Wn. App. at 528 (Quinn-Brintnall, J., concurring in part and dissenting in part); *see also Graham v. West Virginia*, 224 U.S. 616, 32 S. Ct. 583, 56 L. Ed. 917 (1912); *United States v. Jackson*, 368 F.3d 59, 67 n.9 (2d Cir. 2004); *Furth*, 5 Wn.2d at 10; Kyron Huigens, *Solving the* Apprendi *Puzzle*, 90 Geo. L.J. 387, 408 (2002).

¶77 Accordingly, in my view, Witherspoon should be resentenced and, at that time, a jury of his peers should determine whether the State has proved beyond a reasonable doubt the existence of his prior convictions for purposes of the POAA. As Justice Scalia bluntly stated in *Blakely*,

> The Framers would not have thought it too much to demand that, before depriving a man of . . . more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to "the unanimous suffrage of twelve of his equals and neighbours," [4 WILLIAM BLACKSTONE, COMMENTARIES 343 (1769)], rather than a lone employee of the State.

542 U.S. at 313-14.

E. STATE DUE PROCESS CLAIM

¶78 Witherspoon also asserts that imposition of a life sentence without parole violates due process under article I, section 3 of the Washington Constitution because the State did not prove the existence of his prior convictions beyond a reasonable doubt and, in result, insufficient evidence supports the trial court's finding that he is a persistent offender. He is correct.

¶79 Washington has had a recidivist offender statute, in one form or another, since 1903. Prior to passage of the POAA, RCW 9.92.090 served as the primary vehicle for

sentencing repeat offenders to increased sentences as "habitual criminals." That statute states,

> Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in a state correctional facility for life.

RCW 9.92.090.

¶80 Because RCW 9.92.090 did not explicitly provide the burden the State had to meet to prove the existence of prior convictions, our Supreme Court settled the issue. In *State v. Holsworth*, 93 Wn.2d 148, 159, 607 P.2d 845 (1980), the court held, "The existence of three valid felony convictions is an element of the habitual criminal status which must be proved by the State *beyond a reasonable doubt*." (Emphasis added.) Just three years later, the court further elaborated on this requirement and its grounding in the Washington Constitution:

> While the faithful application of *Holsworth* may reduce the number of convictions upon which the State may rely in habitual offender proceedings, its requirements are based upon constitutional mandates which we must obey. We cannot now retreat from our holding in *Holsworth* and allow a renewed emasculation of defendants' constitutional rights simply because it may increase convictions of alleged habitual offenders. The federal and state constitutions, as embodied in our criminal justice system, have concerns much broader than the laudable but narrow one of incarcerating repeat offenders.

*State v. Chervenell*, 99 Wn.2d 309, 315, 662 P.2d 836 (1983).

¶81 In 1986, prior to passage of the POAA, the court was asked to address a somewhat similar standard of proof

issue related to sentencing under the then recently passed Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. In *State v. Ammons*, 105 Wn.2d 175, 186-87, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986), three defendants attempted to argue that under the SRA, the State should be held to the *Holsworth* beyond a reasonable doubt standard for purposes of proving prior convictions to accurately calculate a defendant's offender score: "The fifth challenge, made by all three appellants, is that due process requires that the state must prove a prior conviction, considered in sentencing a defendant, is constitutionally valid and was imposed upon this defendant." The *Ammons* court rejected this reasoning, but in doing so noted that

> [i]n only two situations has this court held that the State, before using a prior conviction, had to affirmatively show its constitutional validity: (1) a proceeding to establish a status of habitual criminal or habitual traffic offender, [*Chervenell*, 99 Wn.2d at 312]; [*Holsworth*, 93 Wn.2d at 157]; *State v. Ponce*, 93 Wn.2d 533, 611 P.2d 407 (1980); and (2) a proceeding to establish the crime of felon in possession of a firearm.

105 Wn.2d at 187.

¶82 Thus, despite having the opportunity to proclaim that the State need only prove a defendant's prior convictions by a preponderance of the evidence *both* for determining recidivism *and* for calculating an offender score, the *Ammons* court distinguished *Chervenell* and *Holsworth*, leaving their fundamental logic intact: for purposes of determining whether a defendant is an habitual offender, the State must prove a defendant's previous convictions beyond a reasonable doubt.

¶83 Finally, in *Manussier*, the court directly addressed whether under the POAA, the State had the burden of proving the existence of a defendant's prior convictions by a preponderance of the evidence or beyond a reasonable doubt standard. Contrary to extensive persuasive authority and 90 years of precedent holding that a defendant's prior offenses used to increase his or her sentence under a recidivist

statute must be proved beyond a reasonable doubt, the *Manussier* majority concluded that because other portions of the SRA call for a preponderance standard, so should the POAA. 129 Wn.2d at 681-84. In a thorough and well-articulated dissent, Justice Madsen pointed out the problematic nature of the majority's reasoning:

> The majority in this case attempts to distinguish the procedures required in *Furth* for habitual offender sentencing by stating that RCW 9.94A, which includes the persistent offender law, provides for a different procedure: prior convictions need only be proved by a preponderance of the evidence. Majority at 682. However, this overlooks the fact that *Furth*'s constitutional determination rests on state constitutional law, not on statutory language. . . .
>
> . . . .
>
> There is little new under the sun and a review of history shows that the [POAA], despite its catchy title—Three Strikes and You're Out—is no exception. The right to an information alleging the defendant is a persistent offender, the right to have the prosecutor exercise discretion in that determination, the right to a jury trial and proof beyond a reasonable doubt of the allegation have been guaranteed by this state's case law and constitution since statehood and should not be tossed aside simply because an old law receives a new name.

*Manussier*, 129 Wn.2d at 691-97 (Madsen, J., dissenting).

¶84 Because our constitution requires the State to prove prior convictions beyond a reasonable doubt for purposes of increasing a defendant's sentence under any of our habitual criminal statutes, Justice Madsen's view is the correct one.[16]

---

[16] The *Manussier* decision predates both *Apprendi* and *Blakely*. The POAA decisions following *Apprendi* and *Blakely* have generally conflated whether *Apprendi* and *Blakely* require a jury to determine the existence of prior convictions and whether the fact finder must find the existence of two prior convictions beyond a reasonable doubt (or fail to discuss the standard of proof entirely). *See, e.g.*, *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 256-57, 111 P.3d 837 (2005) ("In applying *Apprendi*, we have held that the existence of a prior conviction need not be presented to a jury and proved beyond a reasonable doubt. All a sentencing

¶85 In proving prior convictions beyond a reasonable doubt, identity of names is generally insufficient. *See, e.g., State v. Huber*, 129 Wn. App. 499, 502, 119 P.3d 388 (2005) ("Because 'in many instances men bear identical names,' the State cannot [establish identity for purposes of criminal liability] by showing identity of names alone. Rather, it must show, 'by evidence independent of the record,' that the person named therein is the defendant in the present action." (footnotes and internal quotation marks omitted) (quoting *Gravatt v. United States*, 260 F.2d 498, 499 (10th Cir. 1958); *Furth*, 5 Wn.2d at 15; and citing *United States v. Jackson*, 368 F.3d 59, 63 (2d Cir. 2004)). As we explained in *Huber*, the State can meet the burden of proving identity

> in a variety of specific ways. Depending on the circumstances, these may include otherwise-admissible booking photographs, booking fingerprints, eyewitness identification, or, arguably, distinctive personal information. But the State does not meet its burden merely because the defense opts not to present evidence; if the State presents insufficient evidence, the defendant's election not to rebut it does not suddenly cause it to become sufficient.

129 Wn. App. at 503 (footnotes omitted).

¶86 Here, the record reflects that for at least one of Witherspoon's two prior convictions, the trial court appears to have employed a preponderance of the evidence standard in determining the existence of the prior conviction:

> And so the State has established with Exhibit 3 that Mr. Alvin Witherspoon was convicted of one of the most serious offenses

---

court needs to do is find that the prior conviction exists. No additional safeguards are required because a certified copy of a prior judgment and sentence is highly reliable evidence." (citations omitted)); *Smith*, 150 Wn.2d at 143 ("[F]or aggravating and mitigating factors, it seems appropriate to require . . . the additional process of a jury trial. It does not follow, however, that such process is also required to determine the fact of prior convictions."). *But see Smith*, 150 Wn.2d at 156-58 (Chambers, J., dissenting) (explaining that *Furth* required that a recidivism finding be beyond a reasonable doubt, whoever serves as the fact finder, and that Justice Madsen's *Manussier* dissent correctly articulates why this should still be the law).

in Snohomish County Superior Court in 99-1-[0]1322-5. Which was filed on — the judgment and sentence was filed on February 17th, 2000.

The other issue is whether the Court can make the same determination with reference to Count 1 of the judgment and sentence which was entered in Snohomish County cause number 94-1-[00]711-9, and that was issued on July 18th of 1994. And that crime in Count 1 is burglary in the first degree, another of the most serious offenses as defined by the statute, which would make that a strike offense. There is — in that one they have his birthday as September 22nd, 1974 not July 22nd of '74, and there are no fingerprints on that one to connect — to positively identify Alvin Witherspoon that's here today as being the Alvin Witherspoon that was convicted of that. So, that's far more suspect.

I don't know what the burden is. I'll take [the prosecutor] at her word,[17] I should have read this I guess, I wasn't anticipating this sort of problem. I'll take [the prosecutor] at her recitation of the law saying that there's got to be some reason for me to doubt that that is the Alvin Leslie Witherspoon that's before me today. And I don't have that. I believe that it is the same person in light of the presentence investigation as well as the certified copy that's entered.

RP (May 24, 2010) at 34-35.

¶87 "Exhibit 3," referenced above, was a guilty plea from February 2000, involving two counts of residential burglary. At sentencing, Sequim Police Officer Chris Wright testified that the booking fingerprints included with the certified judgment and sentence from February 17, 2000 conclusively matched Witherspoon's booking fingerprints taken after his arrest in November 2009. This satisfied the State's requirement of proving identity beyond a reasonable doubt.

---

[17] The prosecutor argued to the trial court that "[i]t's not the same as trial. There's sufficient evidence before the Court taking into consideration the presentence investigation report as well as the priors that have been admitted to establish that this is his third most serious offense." RP (May 24, 2010) at 33. The trial court felt compelled, as Witherspoon's sentencing began, to state for the record that "[t]here are a lot of inaccuracies in the presentence report and I wanted to clarify for the record that that's not what I'm relying on at all." RP (May 24, 2010) at 2.

¶88 However, the State did not ask Wright to compare booking fingerprints from "Exhibit 4," a July 1994 certified judgment and sentence related to another first degree burglary guilty plea, with Witherspoon's 2009 booking prints.[18] Moreover, the information related to that plea lists the defendant's date of birth as "9/22/74," not Witherspoon's stated July 22, 1974 date of birth in the 2009 booking information. Ex. 1. In addition, the 2009 booking information lists Witherspoon's ethnicity as White, whereas the 1994 booking information lists the defendant's ethnicity as American Indian or Alaskan Native. The booking information from 1994 and 2009 had the same state identification number, WA15782364, and the same name, "Alvin L. Witherspoon." In light of these discrepancies, the trial court believed that the State's success in proving identity related to this strike was "far more suspect." RP (May 24, 2010) at 34. Nevertheless, because the trial court accepted the prosecutor's assertion that the State needed to prove identity only by a preponderance of the evidence—not beyond a reasonable doubt—the trial court ruled that identity had been established. This was error.

¶89 In my opinion, the State is required to do more than convince a trial court by a preponderance of the evidence that a defendant has three strikes for the purposes of the POAA. The State must convince the trial court beyond a reasonable doubt. Here, the State did not satisfy this burden for one of the two previous convictions. Moreover, Witherspoon's current "most serious offense" conviction involves second degree robbery, a class B felony that normally carries a *maximum* penalty of 10 years. RCW 9A.20-.021(1)(b). Washington's constitution requires proof beyond a reasonable doubt to support imprisoning Witherspoon

---

[18] The State did ask Officer Wright to compare booking prints from "Exhibit 2," a certified copy of a 1992 guilty plea involving third degree assault. It is unclear why the State had Wright analyze the 1992 conviction as third degree assault is not a "most serious offense" for purposes of the POAA. Former RCW 9.94A-.030(32). Regardless, Wright was unable to make a definitive match because of the poor quality of the certified copy.

beyond this 10-year statutory maximum. Accordingly, I would vacate Witherspoon's sentence for purposes of the POAA.

¶90 HUNT, J. (concurring in part, dissenting in part) — I concur in Parts 1 through 6 of Judge Quinn-Brintnall's lead opinion affirming Alvin Witherspoon's convictions and in her holding in Parts 7.A, 7.B, and 7.C of the lead opinion that Witherspoon's Persistent Offender Accountability Act (POAA)[19] sentence (1) does not violate the appearance of fairness doctrine, (2) does not constitute cruel and unusual punishment, and (3) does not violate his constitutional right to equal protection. *See* lead opinion at 300-05 (Parts 7.A, 7.B, and 7.C, respectively). But I respectfully dissent from the lead opinion's view that Witherspoon's sentence should be vacated: In particular, I depart from Judge Quinn-Brintnall's rationale and her agreement with Witherspoon in Parts 7.D and 7.E of the lead opinion that imposition of his life sentence under the POAA violated due process under Washington Constitution article I, section 3 because a jury did not determine the existence of his prior most serious offense convictions beyond a reasonable doubt. See lead opinion at 305-15 (Parts 7.D and 7.E, respectively). Existing law is expressly contrary to this assertion and it controls here.

## I. EXISTING LAW ALLOWS TRIAL COURT TO FIND PRIORS BY PREPONDERANCE OF EVIDENCE

¶91 In support of her assertion that the State must prove to a jury the existence of two prior most serious offense convictions beyond a reasonable doubt for POAA sentencing purposes, Judge Quinn-Brintnall relies on (1) her disagreement with the current law "reject[ing] the argument that the Sixth Amendment applies to sentencing determi-

---

[19] RCW 9.94A.570.

nations under the POAA" because, in her view, it "fails to comport with the constitutional principles elucidated in *Apprendi v. New Jersey* and *Blakely[ v. Washington]*";[20] (2) the POAA's predecessor, the "habitual criminal act" of the 1970s, RCW 9.92.090[21] and the Supreme Court's interpretation of this former statute in *State v. Holsworth*, 93 Wn.2d 148, 159, 607 P.2d 845 (1980); and (3) current Chief Justice Madsen's dissent in *State v Manussier*, 129 Wn.2d 652, 691, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997). But former RCW 9.92.090 is no longer the law in the State of Washington. Instead, in 1993, Washington voters approved Initiative 593, later known as the "POAA," now codified as RCW 9.94A.570, which replaced the former habitual criminal act.

¶92 Furthermore, as Judge Quinn-Brintnall candidly acknowledges, current Washington Supreme Court case law interpreting the current POAA is *contrary* to her point of view:[22] "[O]ur Supreme Court has repeatedly rejected the argument that the Sixth Amendment applies to sentencing determinations under the POAA." Lead opinion at 305-06. Expressly rejecting the argument that "a defendant's prior offenses used to increase his or her sentence under a recidivist statute must be proved beyond a reasonable doubt, the *Manussier* majority concluded that because other

---

[20] Lead opinion at 305-06 (citation omitted) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)).

[21] RCW 9.92.900 provides that RCW 9.92.090 does not apply to any felony offense committed on or after July 1, 1984.

[22] To support her departure from current precedent, Judge Quinn-Brintnall cites two United States Supreme Court cases. In *Oregon v. Ice*, 555 U.S. 160, 167-68, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009), the Court held that, because the determination was historically left to the trial court, the Sixth Amendment was not violated where the trial court determined whether a defendant convicted of multiple defenses should be sentenced to consecutive or concurrent sentences. Similarly, in *Southern Union Co. v. United States*, ___ U.S. ___, 132 S. Ct. 2344, 2356, 183 L. Ed. 2d 318 (2012), the Court held that juries must determine a fine's maximum amount, as juries historically made this determination. Neither case, however, addresses the issue before us here or controverts our state Supreme Court's express holdings contrary to Judge Quinn-Brintnall's point of view.

portions of the [Sentencing Reform Act of 1981, ch. 9.94A RCW] call for a preponderance standard, so should the POAA." Lead opinion at 310-11 (citing *Manussier*, 129 Wn.2d at 681-84). The *Manussier* court also held that the POAA does not violate state[23] and federal due process standards in not requiring a jury trial to decide the existence of such prior convictions for sentencing purposes. 129 Wn.2d at 682-83.

¶93 Even after *Manussier*, our Supreme Court has consistently continued to hold that a judge can determine a prior conviction for POAA sentencing purposes and that a jury determination is not required.[24] All three divisions of the Washington Court of Appeals have also continued to follow this holding.[25] This precedent controls here and we must follow it, regardless of any personal disagreement with its premise or correctness. "When the Court of Appeals fails to follow directly controlling authority by this court, it errs." *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 578, 146 P.3d 423 (2006) (citing *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984)).

## II. PREDICTIONS ABOUT FUTURE SUPREME COURT HOLDINGS DO NOT CONTROL

¶94 I further disagree with Judge Quinn-Brintnall's extrapolating from existing law to predict what the United States Supreme Court might hold in the future and then to advocate application of this prediction here. Even assuming

---

[23] The court explicitly based its holding on the due process rights protected by article I, section 3 of our state constitution. *Manussier*, 129 Wn.2d at 679-80.

[24] See, for example, *State v. Smith*, 150 Wn.2d 135, 143, 75 P.3d 934 (2003), *cert. denied*, 541 U.S. 909 (2004), in which the court specifically acknowledged the same holding in *Almendarez-Torres v. United States*, 523 U.S. 224, 247, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), and noted that the United States Supreme Court has not "specifically held otherwise since then." *See also In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 256-57, 111 P.3d 837 (2005); *State v. Mutch*, 171 Wn.2d 646, 659, 254 P.3d 803 (2011).

[25] *See, e.g.*, *State v. Rivers*, 130 Wn. App. 689, 692, 128 P.3d 608 (2005) (Division One), *review denied*, 158 Wn.2d 1008 (2006), *cert. denied*, 549 U.S. 1308 (2007); *State v. McKague*, 159 Wn. App. 489, 515-17, 246 P.3d 558 (Division Two), *aff'd*, 172 Wn.2d 802, 262 P.3d 1225 (2011); *State v. O'Connell*, 137 Wn. App. 81, 90-91, 152 P.3d 349 (Division Three), *review denied*, 162 Wn.2d 1007 (2007).

that her prediction may ultimately turn out to be correct, (1) as we have just noted, this prediction is contrary to controlling existing law; and (2) the Supreme Court has firmly admonished intermediate appellate courts such as ours not to engage in such predictions and, instead, to await its future pronouncements on these issues. For example, the United States Supreme Court has expressly noted:

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

*Agostini v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997) (quoting *Rodriguez de Quijas v. Shearson/ Am. Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989)).[26]

¶95 Judge Quinn-Brintnall asserts that to sentence Witherspoon to life imprisonment under the POAA for his second degree robbery conviction, "Washington's constitution requires proof beyond a reasonable doubt to support imprisoning [him] beyond this 10-year statutory maximum." Lead opinion at 314-15. This assertion, however, flatly contradicts (1) our Washington Supreme Court's express holding in *State v. Magers*[27] that *Blakely* does not apply to POAA sentences; and (2) our court's majority holding in *McKague*, affirmed by our Supreme Court, that a trial court does not violate a defendant's constitu-

---

[26] More recently, addressing a different legal doctrine, our Washington Supreme Court reiterated its prior direction to the lower courts not to apply that doctrine in other contexts " 'unless and until this court has, based upon considerations of common sense, justice, policy and precedent, decided otherwise.' " *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 165, 273 P.3d 965 (2012) (quoting *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 417, 241 P.3d 1256 (2010) (Chambers, J., concurring)).

[27] 164 Wn.2d 174, 193, 189 P.3d 126 (2008).

tional rights when it finds the existence of his prior convictions "by a preponderance of the evidence for purposes of the POAA." *State v. McKague*, 159 Wn. App. 489, 516-17, 246 P.3d 558, *aff'd*, 172 Wn.2d 802, 262 P.3d 1225 (2011). Accordingly, I would hold that neither the federal nor the state constitution requires a jury to find the existence of prior convictions beyond a reasonable doubt for purposes of sentencing under the POAA.[28] I would affirm Witherspoon's POAA sentence no matter how prescient our astute colleague's reasoning and her fervent desire that the law be otherwise.

¶96 ARMSTRONG, J.[*] (concurring in part/dissenting in part) — I concur with Judge Hunt's discussion of the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981[29] issues and that the trial court did not error in finding Alvin Witherspoon's criminal history; assuming a valid conviction here, the trial court did not err in sentencing Witherspoon as a persistent offender. But because the State failed to prove Witherspoon used force or fear to overcome the victim's will and to take her property from her presence, I disagree with the majority that the State proved the robbery charge.

---

[28] Here, the same panel of judges that sat on *McKague* is similarly split on the same POAA issue. As Judge Armstrong explained in *McKague*:

> In affirming the conviction, the lead opinion is split on the sentencing issues under the POAA. Thus, as a matter of law, I concur with Judge Hunt that the federal constitution does not require that a jury find the existence of prior convictions beyond a reasonable doubt under the POAA.

*McKague*, 159 Wn. App. at 524 (Armstrong, J., concurring in part, dissenting in part). Judge Quinn-Brintnall's POAA opinion in the instant case mirrors her dissent in *McKague*.

Here, because Judge Armstrong joins me in this analysis and in my departure from Judge Quinn-Brintnall's desire to have a jury determine prior convictions for POAA purposes, his opinion appears to join with mine to form a majority holding on this point.

[*] Judge David H. Armstrong is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[29] Ch. 9.94A RCW.

¶97 To convict of robbery, the State must prove the following elements: (1) an unlawful taking (2) of personal property (3) from the person or presence of another (4) against her will and (5) by the use or threatened use of immediate force. RCW 9A.56.190; *State v. Truong*, 168 Wn. App. 529, 277 P.3d 74 (2012), *petition for review filed*, No. 87621-5 (Wash. July 17, 2012). "Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial." RCW 9A.56.190. A threat of force exists where the threatened person reasonably interprets the language or actions of another to be threatening. *State v. Shcherenkov*, 146 Wn. App. 619, 629, 191 P.3d 99 (2008). But force used in attempting to escape after a theft is not robbery. *State v. Johnson*, 155 Wn.2d 609, 611, 121 P.3d 91 (2005) (rejecting the argument that force used in an effort to escape after a theft constitutes the force necessary for robbery).

¶98 *State v. Handburgh*, 119 Wn.2d 284, 291, 830 P.2d 641 (1992), illustrates the difference between a forceful taking and a forceful retaining of stolen property. In *Handburgh*, the defendant rode off with a bicycle while the owner was inside a recreational center. When the owner came outside, she saw Handburgh on her bicycle and demanded its return. Handburgh refused, rode the bicycle into an alley, and dropped it into a ditch. When the owner tried to retrieve it, Handburgh threw rocks at her. But the owner persisted and when she approached the bicycle to retrieve it, the defendant and the victim fought. After losing the fistfight, the owner ran from the alley, leaving the bicycle behind. *Handburgh*, 119 Wn.2d at 286. The court concluded that Handburgh did not commit robbery when he took the bicycle because the taking was not by force or threatened force and was not from the owner's presence. But the court concluded that Handburgh committed robbery when he forcibly prevented the owner from retrieving the bicycle. *Handburgh*, 119 Wn.2d at 293.

¶99 Here, there is no evidence that Witherspoon used force or threatened force to take Rebecca Pittario's property. The stolen property was already in Witherspoon's car when Pittario drove into her driveway. During the encounter between Witherspoon and Pittario, Witherspoon held one or both hands behind his back. Pittario testified that she asked Witherspoon what he had behind his back and he replied, "A pistol." Report of Proceedings (Apr. 12, 2010) at 23. Although Witherspoon disputed this, we draw all reasonable inferences in the State's favor and interpret them most strongly against Witherspoon, as we must in evaluating the sufficiency of the evidence. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). But missing is any evidence that Witherspoon's gun threat overcame Pittario's will to recover or retain her property. She did not know that Witherspoon had taken her property and put it in his car when he stated that he had a gun behind his back; she did not discover the theft until Witherspoon was speeding out her driveway. It is logically impossible to find that Pittario had the will to retain or recover property that she did not know had been stolen. And the State offered no evidence that Witherspoon made any threat that Pittario should not follow them. Pittario testified that she was not afraid, and, in fact, she gave chase. Like in *Handburgh*, Witherspoon stole Pittario's property without her knowledge; but unlike *Handburgh*, Witherspoon did not use force or threatened force to overcome Pittario's will to recover her property, even assuming it was in her presence while in his car.

¶100 The State also failed to prove that Witherspoon took any property from Pittario's presence. To be within the victim's presence, the stolen property must be " 'so within [the victim's] reach, inspection, observation or control, that he could, if not overcome with violence or prevented by fear, retain his possession of it.' " *Handburgh*, 119 Wn.2d at 289 (alteration in original) (internal quotation marks omitted) (quoting *State v. Manchester*, 57 Wn. App. 765, 768, 790 P.2d 217 (1990)).

¶101 Pittario testified that she did not know Witherspoon had possession of her property until she saw it in the backseat of his car as he drove away. Thus, Witherspoon's gun threat did not prevent Pittario from attempting to retain possession of the property; instead, her ignorance of the situation did. And when she learned that her property had been stolen as Witherspoon was speeding away, it was no longer within her "reach" such that she could have retained it. *Handburgh*, 119 Wn.2d at 289. The State failed to prove a taking from Pittario's presence.

¶102 Because the State failed to prove a taking by threat of force from Pittario's presence, I would reverse and remand for dismissal of the robbery charge.

Review granted at 177 Wn.2d 1007 (2013).