FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9:43

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>GEOFFREY ROBERT LAWSON,<br><br>Appellant. | No. 44744-4-II<br><br><br><br>PART PUBLISHED OPINION |

JOHANSON, C.J. — A jury found Geoffrey Lawson guilty of one count of first degree burglary, two counts of second degree burglary, two counts of attempted voyeurism, and one count of voyeurism. Lawson appeals, alleging that there was insufficient evidence to support the burglary and the voyeurism convictions. Lawson contends alternatively that his burglary convictions must be reversed because voyeurism does not constitute "a crime against a person or property" that the burglary statute requires. In the published portion of the opinion, we hold that voyeurism is a crime against a person and that sufficient evidence supports the burglary and voyeurism convictions. We address Lawson's remaining claims in the unpublished portion of this opinion. We affirm his convictions.

## FACTS

### I. BACKGROUND

In May 2012, Harrison Medical Center employee Ron Burrows entered one of the women's restrooms and began to sanitize the stall areas. As he opened the stall door, Lawson emerged and ran off despite Burrows's efforts to catch him. Harrison security manager Leon Smith identified Lawson from a security video that showed Lawson entering the hospital through the loading dock area. The video also showed Lawson entering and exiting the women's restroom over approximately four hours.

In June 2012, security officer J.K. was in the same women's restroom at Harrison when someone attempted to open the stall door. Startled, J.K. observed men's dress shoes underneath the door. J.K. viewed security video and determined by the man's pants and shoes that he was the same person who tried to enter the stall while she used the restroom. Meanwhile, other security officers confirmed that the suspicious man was Lawson, who had returned to Harrison a second time. Security Supervisor Charles Nace and Officer Dakota Muir contacted Lawson, but he resisted, causing Nace to fall to the floor with an injury.

Also in June 2012, A.S. used the women's restroom in a Barnes and Noble store. After washing her hands, A.S. saw a man peering into the main bathroom area over the stall door adjacent to the one she had used. According to A.S., the man, who she later identified as Lawson, quickly ducked, but A.S. could see him through a gap in the stall doors. A.S. reported the incident to Barnes and Noble employees. Assistant store manager Amy King reviewed a store security video. The video showed Lawson surreptitiously entering the clearly marked women's restroom.

No. 44744-4-II

## II. Procedure

The State charged Lawson by second amended information with one count of first degree burglary, two counts of second degree burglary, one count of second degree assault, one count of voyeurism, and two counts of attempted voyeurism. The jury returned guilty verdicts on each charge except for second degree assault.

## Analysis

### Insufficient Evidence of Burglary and Voyeurism

Lawson asserts that the State failed to introduce sufficient evidence to prove the Barnes and Noble voyeurism charge and each of the burglary charges. We hold that there was sufficient evidence to prove that Lawson viewed another person in a place where she had a reasonable expectation of privacy and that a rational jury could have found that he committed assault while in or in immediate flight from a building in which he was not lawfully entitled to remain. Thus, we conclude that sufficient evidence supports Lawson's voyeurism and burglary convictions.

### A. Standard of Review

To determine whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014) (citing *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)). The relevant question is "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Drum*, 168 Wn.2d at 35 (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068

3

(1992)). We interpret the evidence "'most strongly against the defendant.'" *Homan*, 181 Wn.2d at 106 (quoting *Salinas*, 119 Wn.2d at 201). We consider both circumstantial and direct evidence as equally reliable and defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

## B. Voyeurism: Reasonable Expectation of Privacy in the Restroom

Lawson contends that the State presented insufficient evidence that at Barnes and Noble he viewed another person in a place where she would have a reasonable expectation of privacy because he viewed A.S. when she stood by the sink in the restroom. Lawson attempts to draw a distinction between the private toilet stall and the other areas of the restroom where there would be no expectation of privacy. We hold that a person has a reasonable expectation of privacy inside a restroom.

Under RCW 9A.44.115(2)(a), a person commits the crime of voyeurism if he knowingly views another person in a place where that person would have a reasonable expectation of privacy. For purposes of the crime of voyeurism, RCW 9A.44.115(1) states,

> (c) "Place where he or she would have a reasonable expectation of privacy" means:
> (i) A place where a reasonable person would believe that he or she could disrobe in privacy, without being concerned that his or her undressing was being photographed or filmed by another; or
> (ii) A place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance;
> (d) "Surveillance" means secret observation of the activities of another person for the purpose of spying upon and invading the privacy of the person.

Lawson's argument is inconsistent with this statutory definition as our courts have construed it.

4

No. 44744-4-II

In *State v. Glas*, 147 Wn.2d 410, 415, 54 P.3d 147 (2002), our Supreme Court considered which places a person would "'reasonably expect to be safe from casual or hostile intrusion or surveillance.'" (Quoting RCW 9A.44.115(1)(b)(ii).) The *Glas* court provided examples of locations where subsection RCW 9A.44.115(1)(c)(ii) would apply. 147 Wn.2d at 416. These locations include places where a person may not normally disrobe, but if he or she did, he or she would expect a certain level of privacy as they would in a person's bedroom, bathroom, or a locker room where someone may undress in front of others. *Glas*, 147 Wn.2d at 416. It would also apply to places where someone may not normally disrobe, but would nonetheless expect another not to intrude, either casually or hostilely. *Glas*, 147 Wn.2d at 416. Our Supreme Court distinguished these kinds of places from purely public locations, such as the shopping mall or the Seattle Center. *Glas*, 147 Wn.2d at 414.

Here, it is undisputed that A.S. viewed Lawson by peeking over the restroom stall door in a place that was clearly delineated for use by women only. Although the women's restroom was inside an otherwise public building and while a person might not usually disrobe inside the common area, one expects privacy in a restroom. *Glas*, 147 Wn.2d at 416. Specifically, a woman using a women's restroom expects a certain degree of privacy from surveillance or from intrusions, either casual or hostile, by members of the opposite sex. Accordingly, we hold that the State presented evidence sufficient for a rational trier of fact to have found that Lawson committed voyeurism by viewing A.S. in a place where she reasonably expected to be safe from casual or

5

hostile intrusion or surveillance and, therefore, where she had a reasonable expectation of privacy.[1]

Therefore, we affirm Lawson's voyeurism conviction.

## C. BURGLARY: A CRIME AGAINST PERSONS OR PROPERTY

Lawson next argues that the evidence is insufficient to support the second degree burglary convictions because voyeurism is not "a crime against a person or property," which is a prerequisite to a burglary conviction.[2] This argument fails. Lawson relies on *State v. Devitt*, 152 Wn. App. 907, 912-13, 218 P.3d 647 (2009), where Division Three of this court held that obstructing the police was not a crime against persons or property for the purpose of a conviction for second degree burglary. There, the court reached its conclusion in part because the crime at issue was not listed among several others as a crime against a person under RCW 9.94A.411, a provision of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, that governs prosecutorial standards. But our Supreme Court's decision in *State v. Snedden*, 149 Wn.2d 914, 73 P.3d 995 (2003), offers a more apt comparison.

In *Snedden*, our Supreme Court held that indecent exposure was a crime against a person and therefore could serve as the predicate crime for second degree burglary. 149 Wn.2d at 919. There, the court considered the same argument Lawson advances now, that the subject crime was

---

[1] Lawson also argues that the evidence was insufficient to support the voyeurism conviction because there is no evidence that Lawson viewed A.S.'s intimate areas during the Barnes and Noble incident. But viewing a person's intimate areas is merely one of two alternative means of committing voyeurism. The State did not need to prove that its evidence supported the intimate areas alternative because it only argued the reasonable expectation of privacy means.

[2] A person is guilty of second degree burglary if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or dwelling. RCW 9A.52.030(1).

not one "against a person" because it did not appear among the list of such crimes within RCW 9.94A.411. *Snedden*, 149 Wn.2d at 922. The *Snedden* court found this unpersuasive. The court found that RCW 9.94A.411 lists crimes for the purpose of establishing a list of prosecuting standards and, as such, serves a wholly different purpose than the second degree burglary statute. *Snedden*, 149 Wn.2d at 922. Additionally, the court concluded that this list was not applicable in context because it was enacted several years after the second degree burglary statute and, therefore, the list could not have been considered by the legislature when adopting the burglary statute. *Snedden*, 149 Wn.2d at 922. And furthermore, the SRA list and second degree burglary statutes are contained in separate chapters of the criminal code, which supports the notion that the legislature did not intend the SRA list to be used as an interpretive device in other chapters of the code. *Snedden*, 149 Wn.2d at 922.

Additionally, the language of the voyeurism statute itself lends credence to the position that voyeurism is a "crime against a person." A person commits voyeurism when he or she either views another *person* without that *person's* knowledge in a place where *he* or *she* has a reasonable expectation of privacy or when that person views the intimate areas of another *person*. RCW 9A.44.115(2)(a)-(b).

Accordingly, we hold that voyeurism is a crime against a person and, therefore, can serve as the predicate crime for second degree burglary. We hold further that the State presented sufficient evidence for a rational trier of fact to conclude that Lawson is guilty of the second degree burglaries because he entered the women's restroom with the intent to commit a crime against a person or property. Therefore, we affirm Lawson's second degree burglary conviction.

7

No. 44744-4-II

## D. Burglary: Immediate Flight

Finally, Lawson argues that the evidence was insufficient to support his first degree burglary conviction because it requires proof that the accused "in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime . . . (b) assaults any person. RCW 9A.52.020(1). Lawson maintains that he was not in "immediate flight" from the restroom at Harrison because he was stopped by security officer Nace elsewhere in the building and because there was no testimony that Lawson appeared to be fleeing from the scene.

Lawson ignores the statute's language that provides that he can be guilty of first degree burglary if he assaults someone "while in the building." Nace first encountered Lawson outside the restroom that Lawson had entered previously. Nace and another officer took Lawson by each arm to escort him towards the lobby when Lawson began to struggle to try to get away. Lawson was shoving, pushing, pulling, and trying to free his arms. At some point during the struggle, Lawson either kneed Nace or kicked Nace in the knee, causing Nace to fall in pain. Viewed in a light most favorable to the State, this is sufficient evidence for a rational trier of fact to conclude that the State proved that Lawson assaulted Nace "while in the building or in immediate flight therefrom." RCW 9A.52.020(1). We hold that Lawson's claim fails for this reason.

In conclusion, we hold that sufficient evidence supports Lawson's voyeurism, second degree burglary, and first degree burglary convictions. We address Lawson's remaining claims in the unpublished portion of this opinion. We affirm his convictions.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

8

Lawson also argues that (1) his constitutional right to notice of the charges against him was violated, (2) the trial court abused its discretion by denying Lawson's motion for a bill of particulars, (3) he was denied his right to a unanimous jury verdict, (4) the trial court erred by admitting improper propensity evidence under ER 404(b), (5) the sentencing court failed to properly determine his offender score and standard range, and (6) the trial court erred by ordering repayment of expenses incurred by the State in prosecuting the alleged crimes as a legal financial obligation (LFO). Lawson also filed a statement of additional grounds (SAG) in which he alleges several additional errors. We hold that the first five arguments lack merit, that Lawson's argument regarding his LFOs is not properly preserved for review, and that Lawson's SAG issues either lack merit or are not properly before this court. Accordingly, we affirm Lawson's convictions.

## ADDITIONAL FACTS

### I. INFORMATION AND BILL OF PARTICULARS

The charging document included the relevant dates and county of the alleged crimes, along with details identifying victims of the voyeurism charges, but otherwise the State relied on the statutory language to describe each offense. Lawson did not challenge the information's adequacy before or during his trial.

But Lawson filed a bill of particulars motion before trial, requesting several additional pieces of information, including whether the State was relying on an unlawful entry or an unlawful remaining theory, whether there was a victim associated with the May 17 incident at Harrison, and where A.S. was located during the Barnes and Noble incident that would give rise to a reasonable expectation of privacy among others. The State clarified which location was associated with each

date and each charge. The trial court then denied Lawson's motion, ruling that all other information necessary to notify Lawson had been provided through the discovery process.

## II. ADMISSION OF ER 404(B) EVIDENCE

Also before trial, the State moved to admit several instances of Lawson's prior misconduct involving either convictions or allegations of voyeurism or attempted voyeurism. Over Lawson's objection, the trial court ruled that several incidents of prior misconduct were admissible under ER 404(b). The following evidence was admitted at trial.

In 2008, R.A.-B. entered the women's restroom inside a Seattle church. When R.A.-B. turned to flush the toilet, she noticed a mirror underneath the stall divider. She saw that it was a man, whom she identified as Lawson, in the adjacent stall with his pants down, "kind of touching [himself]." 2 Report of Proceedings (RP) at 165. After Lawson was apprehended, witnesses showed police officers several items they had removed from Lawson, including the mirror, women's shoes, and women's pantyhose. Eventually, Lawson pleaded guilty to one count of voyeurism.

In 2010, C.H. used the women's restroom at a Bremerton church. As she left the restroom, C.H.'s sister told C.H. that she saw a man inside one of the stalls. Both women went back into the restroom where they saw Lawson, through a gap, standing on the toilet. Lawson left the stall, claiming that he had mistakenly used the women's restroom. Lawson later pleaded guilty to one count of attempted voyeurism.

In 2011, Q.H. and P.H. were with their mother, Shannon,[3] at her office. Q.H. and P.H. went to use the women's restroom. P.H. looked behind her to make sure no one was looking at her when she saw a man's face through the crack in the stalls. Q.H. recalled seeing black women's high heeled shoes and black leggings in the stall next to her. When her daughters explained that they had seen a man in the women's restroom, Shannon and her coworker confronted the man, whom they identified as Lawson, outside the restroom, but Lawson was able to exit through a stairwell. Shannon positively identified Lawson through a photomontage and he later pleaded guilty to one count of voyeurism for the incident.

The trial court ruled that these instances of prior misconduct were admissible under the exception for common scheme or plan because the prior acts were markedly similar and shared a concurrence of common features with the charged crimes. The trial court concluded further that the misconduct was relevant and admissible under the exception for motive because it directly showed a motive to enter or remain unlawfully for the purpose of sexual gratification. Additionally, the trial court ruled that the prior misconduct was also relevant to show a lack of accident or mistake.

Following trial and finding Lawson guilty of all charges except the second degree assault charge, the jury also answered "yes" on special verdict forms when asked whether the crimes involved sexual motivation, whether a victim was present during the commission of some of the crimes and, if so, whether the crimes involved an invasion of the victim's privacy.

---

[3] We refer to Shannon by her first name for the sake of confidentiality.

Before the sentencing hearing, the State filed two copies of prior judgment and sentence documents as proof of Lawson's previous voyeurism convictions. The sentencing court used these exhibits in conjunction with the State's sentencing memorandum to calculate Lawson's offender score and standard range. Lawson objected to the presentence report, but not to the State's calculation of his offender score. The court then sentenced Lawson to 176 months. Lawson appeals.

## ANALYSIS

### I. ADEQUACY OF CHARGING INFORMATION

Lawson contends that the State violated his right to notice under the state and federal constitutions because the charging document was factually inadequate. We hold that the charging document was constitutionally adequate because the State is entitled to charge a defendant using the language of the statute when the crime is a statutory offense.

### A. STANDARD OF REVIEW AND RULES OF LAW

The Sixth Amendment to the United States Constitution provides in part, "In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." Article I, section 22 of the Washington State Constitution provides in part, "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him."

We review a challenge to the sufficiency of a charging document de novo. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (citing *State v. Siers*, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012)). A charging document must allege "'[a]ll essential elements of a crime,'" statutory or otherwise to provide a defendant with sufficient notice of the nature and cause of the accusation against him. *Zillyette*, 178 Wn.2d at 158 (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d

12

No. 44744-4-II

86 (1991); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To satisfy this requirement, the information must allege (1) "every element of the charged offense" and (2) "particular facts supporting them." *State v. Nonog*, 169 Wn.2d 220, 226, 237 P.3d 250 (2010) (citing *State v. Leach*, 113 Wn.2d 679, 688, 782 P.2d 552 (1989)); *see also State v. Simms*, 171 Wn.2d 244, 250, 250 P.3d 107 (2011). The primary purpose of the rule is to give the defendant sufficient notice of his charges so he can prepare an adequate defense. *State v. Tandecki*, 153 Wn.2d 842, 846, 109 P.3d 398 (2005). Where the information's sufficiency is challenged for the first time on appeal, we construe the document liberally in favor of validity. *Zillyette*, 178 Wn.2d at 161 (citing *Kjorsvik*, 117 Wn.2d at 105).

We also distinguish between charging documents that are constitutionally deficient and those that are merely "vague." *Leach*, 113 Wn.2d at 686. A constitutionally deficient information is subject to dismissal for failure to state an offense on the face of the charging document by omitting allegations of the essential elements constituting the offense charged.[4] *Leach*, 113 Wn.2d at 686-87. An information that states each statutory element of a crime, but is vague as to some other significant matter, may be corrected under a bill of particulars. *Leach*, 113 Wn.2d at 687.

B. INFORMATION NOT CONSTITUTIONALLY DEFICIENT

The State charged Lawson with first and second degree burglary and voyeurism under RCW 9A.52.020(1), .030(1), and RCW 9A.44.115(2).

The information alleged in relevant part,

> On or about May 17, 2012, in the County of Kitsap, State of Washington, the above-named Defendant, with intent to commit a crime against a person or

---

[4] *Accord Nonog*, 169 Wn.2d at 226 ("Failure to allege each element means that the information is insufficient to charge a crime, and so must be dismissed.").

13

property therein, entered or remained unlawfully in a building; contrary to the Revised Code of Washington 9A.52.030(1) [Count I].

. . . .

On or about June 2, 2012, in the County of Kitsap, State of Washington, the above-named Defendant, for the purpose of arousing or gratifying the sexual desire of any person, did knowingly view, photograph, or film (a) another person, to wit: AKS, 06/10/1986, without that person's knowledge and consent while the person was in a place where he or she would have a reasonable expectation of privacy; and/or (b) the intimate areas of another person, to wit: AKS, 06/10/1986, without that person's knowledge and consent under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place; contrary to the Revised Code of Washington 9A.44.115(2) and Laws of 2003, Chapter 213. [Count IV].

Clerk's Papers (CP) at 1-5.

Frequently, charging information is challenged as deficient for its failure to allege essential legal elements of a charged crime. But here, Lawson asserts that the information was constitutionally inadequate because it failed to sufficiently allege the facts underlying each element of the offenses and because the charging document merely "parroted" the language of each statute. He does not claim that he was unaware of the nature of the charges against him. Instead, Lawson relies on the following language from *Leach*, where the court said that

> the "essential elements" rule requires that a charging document *allege facts supporting every element of the offense*, in addition to adequately identifying the crime charged. This is not quite the same as a requirement to "state every *statutory element of*" the crime charged.

113 Wn.2d at 689. But Lawson's argument is not convincing because the *Leach* court also reaffirmed a longstanding rule that an information may rely on the language of a statute if the statute defines the offense with certainty:

> In an information . . . for a statutory offense, it is sufficient to charge in the language of the statute if the statute defines the crime sufficiently to apprise an accused person with reasonable certainty of the nature of the accusation.

113 Wn.2d at 686 (citing *State v. Grant*, 89 Wn.2d 678, 686, 575 P.2d 210 (1978)).

And *Leach* "does not impose any additional requirement that the State allege facts beyond those that sufficiently support the elements of the crime charged or that the State describe the facts with great specificity." *State v. Winings*, 126 Wn. App. 75, 85, 107 P.3d 141 (2005) (citing *Leach*, 113 Wn.2d at 688). Moreover, even if a charging document does fail to allege specific facts, this failure may render the charging document vague, but it does not render it constitutionally deficient. *State v. Laramie*, 141 Wn. App. 332, 340, 169 P.3d 859 (2007).

Here, construed liberally, the information provided Lawson with sufficient notice of the charges against him. Specifically, the information alleged that on May 17, June 2, and June 19, 2012, Lawson (1) entered or remained in a building, (2) unlawfully, and (3) with intent to commit a crime against a person or property. It further alleged that on June 2, 2012, Lawson (1) knowingly viewed, filmed, or photographed, (2) another person, (3) without that person's knowledge, (4) in a place where the other person had a reasonable expectation of privacy, or (5) viewed the intimate areas of another person. Accordingly, we hold that the information adequately apprised Lawson about the nature of the charges and that it was therefore constitutionally sufficient. But because Lawson requested a bill of particulars, we next address whether the information was vague to the extent that the trial court abused its discretion by denying Lawson's motion for the same.

## II. BILL OF PARTICULARS

Lawson argues that the trial court abused its discretion when it denied his motion for a bill of particulars because the trial court's denial infringed upon his right to demand the nature and cause of the accusations against him. We disagree because no bill of particulars is required where the information called for has been provided either in the charging document or in some other satisfactory form.

15

No. 44744-4-II

## A. STANDARD OF REVIEW

Whether or not to grant a request for a bill of particulars is a matter left to the discretion of the trial court. *State v. Noltie*, 116 Wn.2d 831, 845, 809 P.2d 190 (1991); CrR 2.1(c).[5] Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State v. Dobbs*, 180 Wn.2d 1, 10, 320 P.3d 705 (2014) (citing *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

A criminal defendant has "a constitutional right to be informed of the nature and cause of the accusation against him" to enable him to prepare a defense. *State v. Bergeron*, 105 Wn.2d 1, 18, 711 P.2d 1000 (1985) (citing U.S. CONST. amend. VI; CONST. art. I, § 22 (amend. 10)). The purpose of a bill of particulars is to "amplify or clarify particular matters essential to the defense." *State v. Holt*, 104 Wn.2d 315, 321, 704 P.2d 1189 (1985). But no bill of particulars is required if the particulars are already in the charging document or if the information called for has been provided by the government in some other satisfactory form. *Noltie*, 116 Wn.2d at 845.

## B. DENIAL OF LAWSON'S MOTION

Before trial began, Lawson filed a motion for a bill of particulars alleging that he needed several specific pieces of information to mount his defense. Lawson argued that he was entitled to additional information from the State including whether the State was relying on unlawful entry or unlawful remaining, and whether it was relying on an intended crime against a person or against property for purposes of the burglary charge. Lawson also suggested that he needed to know what

---

[5] CrR 2.1(c) provides, "**Bill of Particulars.** The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within 10 days after arraignment or at such later time as the court may permit."

alleged acts constituted his "common scheme or plan" for purposes of the ER 404(b) evidence the State intended to use against him. CP at 322. At the hearing on his motion, Lawson argued that he was entitled to the "specific date and time of the offense, its location, the name of the complainant and the victim, and the means by which [he] allegedly committed the offense." RP (Jan. 4, 2013) at 84.

But Lawson was not entitled to a bill of particulars because the vast majority of this information had been made readily available to Lawson in the charging document and through the discovery process. Lawson did not dispute the State's contention that Lawson had been provided full discovery and did not present any argument to the contrary.[6] The charging document already contained the date, location (by county), and the name and birthdate of any victim involved. Additionally, the trial court required the State to supplement the charging document by describing which building was associated with the charge on each of the dates in question. Subsequently, the trial court ruled that the rest of the information to which Lawson was entitled had already been provided through the discovery process. Lawson did not object to the court's ruling.

And finally, the State was not required to disclose which alternative means of burglary it sought to pursue to prove Lawson's guilt. Rather, "[w]hen a statute provides that a crime may be committed in alternative ways or by alternative means, the information may charge one or all of

---

[6] The statements of probable cause and investigation reports were attached to the first amended information (amended to add the Barnes and Noble incident). These attachments contained narratives relating to each incident that described the facts and the parties involved in detail. Although the State proceeded to trial on the second amended information, the only purpose of the final amendment was to correct a clerical error related to the date of one of the incidents. Additionally, the State asserted that it had essentially provided Lawson with the testimony of every witness because "[i]t's in the reports" and "their testimony will be consistent with that." RP (Dec. 3, 2012) at 9.

the alternatives, provided the alternatives are not repugnant to one another." *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988). Here, the State opted to include each of the alternative means in the information. Accordingly, we hold that the trial court properly denied Lawson's motion for a bill of particulars because any particular information to which Lawson was entitled appeared in the information or was made available in another satisfactory form, namely, the discovery process. *Noltie*, 116 Wn.2d at 844. Lawson's claim fails.

## III. UNANIMOUS JURY VERDICT

Lawson contends that his right to a unanimous jury verdict was infringed both by the trial court's failure to provide a unanimity instruction when the State relied on multiple acts to prove one offense and also when the court instructed the jury on alternative means that were not each supported by the evidence.[7] We hold that no unanimity instruction was required because the multiple acts that gave rise to the first degree burglary charge constituted a continuing course of conduct, because the State elected and pursued only one means of committing burglary, and because the State elected and pursued only one of two alternative means of committing voyeurism.

## A. MULTIPLE ACTS

Here, Lawson contends that the second degree burglary conviction violated his right to a unanimous jury verdict because the State introduced evidence both of Lawson's entrance to Harrison through the loading dock as well as Lawson's entrance into the women's restroom. Lawson argues that a *Petrich* instruction should have been given because it was unclear upon

---

[7] Lawson did request a *State v. Petrich* instruction, but his argument was related to alternative means not "multiple acts." 101 Wn.2d 566, 683 P.2d 173 (1984). But this issue asserts a manifest constitutional error and may be raised for the first time on appeal. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009).

which act the jury voted to convict. We construe Lawson's entrance into Harrison and his subsequent entrance into the women's restrooms as a continuing course of conduct.

We review the adequacy of jury instructions de novo. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). Our state constitution requires that in a criminal prosecution, an impartial jury render a unanimous verdict. CONST. art. I, §§ 21, 22; *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); *State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980). Washington jurisprudence has produced two distinct lines of analysis regarding the jury unanimity requirement. The review standard for whether the failure to provide a unanimity instruction was error hinges on whether we are dealing with an *alternative means* case or a *multiple acts* case. *State v. Bobenhouse*, 166 Wn.2d 881, 892, 214 P.3d 907 (2009). When the State presents evidence of multiple acts that could each form the basis for one charged crime, the State must choose which of the acts it relied on or the court must give a *Petrich* instruction to the jury, requiring them to agree on a specific criminal act.[8] *State v. Coleman*, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007).

But the necessity for a unanimity instruction does not arise where the evidence indicates a "continuing course of conduct." *State v. Locke*, 175 Wn. App. 779, 803, 307 P.3d 771 (2013), *review denied*, 179 Wn.2d 1021 (2014). To determine whether there is a continuing course of conduct, we evaluate the facts in a commonsense manner considering the time separating the criminal acts and whether the criminal acts involved the same parties, location, and ultimate purpose. *State v. Brown*, 159 Wn. App. 1, 14, 248 P.3d 518 (2010), *review denied*, 171 Wn.2d

---

[8] *Petrich*, 101 Wn.2d at 572-73.

1015 (2011). Evidence that a defendant engaged in a series of actions intended to secure the same objective supports the characterization of those actions as a continuing course of conduct rather than as several distinct acts. *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995).

Considering the facts in a commonsense manner compels the conclusion that Lawson entered Harrison and the women's restroom therein as part of a continuing course of conduct for the purpose of committing voyeurism. The separate acts were close in time and were committed at the same location. Assuming, without deciding, that entry through the private loading dock area was a criminal act, Lawson's entry into Harrison was accomplished to further his ultimate purpose of gaining access to the women's restrooms. Lawson could not have reached his intended destination without first entering the main building itself. We hold that no unanimity instruction was required because Lawson's multiple acts were intended to secure the same objective, to enter the women's restroom with the intent to commit voyeurism.

## B. ALTERNATIVE MEANS

Lawson also argues that his right to a unanimous jury verdict was violated because the State failed to produce substantial evidence supporting each of the alternative means of the alleged crimes. Whether substantial evidence exists to support each alternative means of the crimes charged is a matter we need not address because the State argued and presented evidence to the jury only as to one means for both the burglary and voyeurism charges.

Our analysis regarding a challenge to the unanimity requirement in an alternative means case differs slightly from a challenge involving multiple acts. When a jury is instructed as to more than one means of committing a criminal offense, our courts safeguard a defendant's constitutional right to a unanimous verdict by affirming a conviction only when (1) substantial evidence supports

20

each alternative means on which evidence or argument was presented, or (2) evidence and argument is presented on only one means. *State v. Witherspoon*, 171 Wn. App. 271, 285, 286 P.3d 996 (2012) (quoting *State v. Lobe*, 140 Wn. App. 897, 905, 167 P.3d 627 (2007)), *aff'd*, 180 Wn.2d 875, 329 P.3d 888 (2014).

### 1. BURGLARY CHARGES

Second degree burglary can be committed by alternative means: either by unlawfully entering a building or unlawfully remaining in a building. RCW 9A.52.030. Lawson asserts that the State did not introduce substantial evidence to support the "unlawful entry" means. We hold that Lawson's claim fails because, notwithstanding whether there exists enough evidence to support the unlawful entry means, the State only presented evidence and argument on the unlawful remaining means.[9]

For purposes of the burglary charges, the trial court's "to-convict" instruction provides,

> A person commits the crime of burglary in the second degree when he or she enters or remains unlawfully in a building with intent to commit a crime against a person or property therein.
> A person enters or remains unlawfully in a building when he or she is not then licensed, invited, or otherwise privileged to so enter or remain.
> A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public[.]
> "Unlawful remaining" occurs when (1) a person has lawfully entered a building pursuant to license, invitation or privilege; (2) the invitation, license or privilege is expressly or impliedly limited; (3) the person's conduct violates such limits; and (4) the person's conduct is accompanied by intent to commit a crime in the building.

---

[9] At one point, the State claimed that it was proceeding under both an unlawful entry and an unlawful remaining theory. But the State did so during a colloquy with the trial court, outside the presence of the jury. Before the jury, the State only argued the unlawful remaining theory.

No. 44744-4-II

CP at 517.

While the instruction obviously refers to unlawful entry, the record establishes that the State only argued the unlawful remaining theory before the jury. In closing argument, the prosecutor discussed the elements of the "to-convict" instructions on the burglary charges. He said,

> Let's start with the first part, entered or remained unlawfully. The unlawful remaining, the State's burden to prove if a person lawfully enters a building pursuant to license, privilege, or invitation. Start with that. It's Harrison Hospital. It's not in dispute. Most people, general public, can come into Harrison Hospital.
> Number 2, the invitation, license, or privilege is expressly or impliedly limited. There's a sign on the door that says women's restroom. It expressly states who can go into that area. Much like an employee only sign, this tells you who is permitted to go in that area. Impliedly, culturally, our society knows, from a young age, women. This sign means women. The bathrooms are divided for a sense of privacy. The person's conduct violates such limits. You saw him go into the women's restroom. You heard from Mr. Burrows, who found him in the women's restroom in the handicapped stall. And his conduct is accompanied by an intent to commit a crime in the building.

4 RP at 559-60.

The State's theory throughout the duration of trial was that Lawson exceeded the scope of any license or privilege he may have had inside Harrison when he went into the women's restroom and remained there for extended periods of time. The State never argued or implied that the restroom itself should be considered a separate building. And it is clear from closing argument that the legality of Lawson's entry into Harrison itself was not in dispute. Moreover, the prosecutor went element by element through the definition for unlawful remaining, arguing to the jury that the State's evidence established each. Accordingly, "'[t]here [wa]s no danger that the jury based its guilty verdict on the unsupported alternative means.'" *Witherspoon*, 171 Wn. App. at 287 (first

22

alteration in original) (quoting *Lobe*, 140 Wn. App. at 909 (Hunt, J., dissenting)). We hold that no unanimity instruction was required for this reason.

2. VOYEURISM CHARGE

There are two means by which Lawson could have committed voyeurism: viewing another person in a place where that person had a reasonable expectation of privacy, or viewing the intimate areas of another person without that person's knowledge. RCW 9A.44.115(2)(a)-(b). Lawson argues that the trial court should have given a unanimity instruction because the State failed to present substantial evidence to support the "intimate areas" means of committing voyeurism. We disagree.

Although viewing intimate areas may be an alternative means of committing voyeurism, there is no mention of "intimate areas" anywhere in the trial court's instructions to the jury. The court's "to-convict" instruction read,

> A person commits the crime of voyeurism when, for the purposes of arousing or gratifying the sexual desire of any person, the person knowingly views a second person without the second person's knowledge and consent, and while the second person is being viewed, the second person is in a place where he or she would have a reasonable expectation of privacy.

CP at 527. This instruction contains only the expectation of privacy means. The instruction then provides definitions for "[v]iew" and "[a] place where a person would have a reasonable expectation of privacy." CP at 527.

The State also did not attempt to introduce any evidence which purported to establish that Lawson viewed any victim's intimate areas. And in closing, the prosecutor argued only that Lawson viewed A.S. (the victim of the Barnes and Noble incident) while she was in the restroom, a place where she reasonably expected privacy, free from casual or hostile intrusion or

23

surveillance. Accordingly, like the burglary convictions, "'[t]here [wa]s no danger that the jury based its guilty verdict on the unsupported alternative means.'" *Witherspoon*, 171 Wn. App. at 287 (first alteration in original) (quoting *Lobe*, 140 Wn. App. at 909 (Hunt, J., dissenting)). We so hold.

## IV. ER 404(B) EVIDENCE

We turn next to Lawson's argument that the trial court misinterpreted ER 404(b) and violated Lawson's Fourteenth Amendment right to due process by admitting improper propensity evidence. We hold that the trial court correctly interpreted ER 404(b) and did not abuse its discretion by admitting the evidence of Lawson's prior misconduct under recognized exceptions to the general rule.

### A. STANDARD OF REVIEW

We review the trial court's interpretation of ER 404(b) de novo as a matter of law. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). If the trial court interprets ER 404(b) correctly, we review the trial court's ruling to admit or exclude evidence of misconduct for an abuse of discretion. *Foxhoven*, 161 Wn.2d at 174. A trial court abuses its discretion where it fails to abide by the rule's requirements. *Foxhoven*, 161 Wn.2d at 174.

Generally, evidence of a defendant's prior misconduct is inadmissible to demonstrate the accused's propensity to commit the crime charged. ER 404(b)[10]; *State v. Fisher*, 165 Wn.2d 727,

---

[10] ER 404(b) provides,
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

744, 202 P.3d 937 (2009). But ER 404(b) allows the introduction of prior misconduct for other purposes like demonstrating motive or intent, common scheme or plan, or lack of mistake or accident. *Fisher*, 165 Wn.2d at 744 n.2. And we read ER 404(b) in conjunction with ER 403. ER 403 requires the trial court to exercise its discretion in excluding relevant evidence that would be unfairly prejudicial.

Prior to the admission of misconduct evidence, the court must (1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence. *Fisher*, 165 Wn.2d at 745 (citing *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995); *Foxhoven*, 161 Wn.2d at 175). Doubtful cases must be resolved in favor of exclusion. *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

## B. EVIDENCE OF PRIOR MISCONDUCT PROPERLY ADMITTED

In support of his assertion that the trial court misinterpreted ER 404(b) and abused its discretion by admitting the prior misconduct, Lawson cites the procedure employed by the court in *Fisher*. There, the State charged Timothy Fisher with crimes stemming from the sexual abuse of his former step-daughter. *Fisher*, 165 Wn.2d at 733. Before trial, the State sought to introduce evidence that Fisher physically abused his former step-children in order to explain the children's fear of Fisher as the cause of the step-daughter's lengthy delay in reporting the abuse. *Fisher*, 165 Wn.2d at 734. The trial court determined that the physical abuse evidence would be admissible

25

under ER 404(b), albeit conditionally.[11] 165 Wn.2d at 734. The court recognized the highly prejudicial nature of the physical abuse evidence and accordingly conditioned admissibility on the defense's opening of the door. *Fisher*, 165 Wn.2d at 734. Only if the defense raised the delay in reporting as an issue could the State introduce the evidence. *Fisher*, 165 Wn.2d at 734, 746.

Our Supreme Court held that the trial court's ruling was proper and concluded that the ruling made sense given the fact that Fisher was not on trial for or charged with physical abuse and the physical abuse only became relevant if the defense inquired into the delayed reporting. *Fisher*, 165 Wn.2d at 746. Here, Lawson urges us to hold that the trial court erred by failing to similarly condition the admissibility of Lawson's prior misconduct on whether he raised certain issues. Specifically, Lawson argues that because he never asserted that his entry into the women's restroom was an accident and because he never challenged the sexual gratification aspect of the charge, that the trial court should not have admitted any evidence of those issues. But unlike *Fisher*, Lawson was on trial for voyeurism and therefore it was proper for the trial court to admit evidence regarding prior instances of voyeurism or attempted voyeurism as long as ER 404(b) exceptions applied and the trial court properly weighed the potential prejudice of the evidence against its probative value. Contrary to Lawson's view, the *Fisher* court did not rule that a court *must* condition ER 404(b) evidence on the defense's broaching certain topics, only that such an approach made sense on the facts of that case.

Here, during the ER 404(b) hearing, the trial court properly applied the rule and carefully considered whether exceptions applied based on the facts before it. The trial court found that each

---

[11] These rulings were separate and distinct from rulings concerning Fisher's abuse of his current step-children at the time of trial. The *Fisher* court concluded that the trial court had abused its discretion by admitting evidence regarding the current step-children. *Fisher*, 165 Wn.2d at 750.

instance of prior misconduct that it ruled admissible had occurred by a preponderance of the evidence. The trial court then found that each of the prior instances showed motive and Lawson's common scheme.

As to each admissible instance of prior misconduct, the trial court also found that the evidence was relevant and that the probative value of the evidence outweighed its prejudicial effect. The trial court also memorialized its rulings in detailed findings of fact and conclusions of law. The fact that the trial court refused to admit some of the prior misconduct because the alleged instances were either too remote in time, too dissimilar, or too prejudicial bolsters the position that the trial court did not haphazardly admit the evidence before properly considering the applicable factors set forth by our courts. Furthermore, the trial court consistently provided limiting instructions each time an ER 404(b) witness testified, imploring the jury only to consider the evidence for the limited purposes for which it ruled the prior misconduct admissible. Accordingly, we hold that the trial court did not abuse its discretion by admitting evidence of prior misconduct under ER 404(b).

## V. OFFENDER SCORE AND SENTENCING RANGE

We turn to Lawson's argument that his sentence must be vacated when the sentencing court failed to properly determine his offender score and sentencing range. We hold that the sentencing court properly determined Lawson's offender score and standard range because the State proved Lawson's criminal history by a preponderance of the evidence.

A trial court must conduct a sentencing hearing before imposing a sentence on a convicted defendant. RCW 9.94A.500(1). A defendant's offender score affects the sentencing range and is generally calculated by adding together the defendant's current offenses and the prior convictions.

RCW 9.94A.589(1)(a). It is well established that the State has the burden to prove prior convictions at sentencing by a preponderance of the evidence. *State v. Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012) (citing *State v. Ford*, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999)). "The best evidence of a prior conviction is a certified copy of the judgment." *Ford*, 137 Wn.2d at 480.

Lawson's argument that the State provided evidence of only one prior conviction for voyeurism is unpersuasive. Attached to its sentencing memorandum, the State provided copies of judgment and sentence documents that established that Lawson had two prior convictions for voyeurism. The State and the trial court relied on no more than these two previous convictions and the convictions Lawson now appeals in calculating his offender score. Therefore, the trial court relied on no more information than that which was admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. RCW 9.94A.530(2). We hold that Lawson's claim fails.

## VI. LEGAL FINANCIAL OBLIGATIONS

Finally, Lawson argues for the first time on appeal that the sentencing court lacked the statutory authority to order him to pay the cost of court-appointed attorney fees when he represented himself throughout the trial. Lawson argues further that the trial court erred by ordering him to pay costs and fees without first inquiring as to his present or future ability to satisfy those obligations. We decline to exercise our discretion to review this issue raised for the first time on appeal. RAP 2.5(a); *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review*

28

No. 44744-4-II

*granted*, 178 Wn.2d 1010 (2013). We hold that Lawson failed to properly preserve the issue for review.[12]

### VII. STATEMENT OF ADDITIONAL GROUNDS

Lawson filed a SAG in which he alleges several additional errors. We hold that these claims likewise fail.[13]

### A. ACCESS TO THE COURTS

Lawson asserts that he was subjected to "overwhelmingly oppressive interference" and denied access to the courts. SAG at 15. Lawson claims that the trial court did not give him adequate time to prepare, restricted his ability to interview witnesses, and did not provide him with adequate resources. We hold that Lawson was not denied access to the court.

Article I, section 22 affords a pretrial detainee, who has exercised his constitutional right to represent himself, a right of reasonable access to State-provided resources that will enable him to prepare a meaningful pro se defense. What measures are necessary or appropriate to constitute reasonable access lies within the sound discretion of the trial court. *State v. Silva*, 107 Wn. App. 605, 622-23, 27 P.3d 663 (2001).

---

[12] Regarding Lawson's claim that he should not be required to pay court-appointed attorney fees because he proceeded pro se, we note that he did have a court-appointed attorney representing him from June 2012 until November 2012.

[13] We already addressed Lawson's argument that his sentence was unconstitutional because his offender score was improperly calculated. This claim was raised and addressed as part of Lawson's opening brief. Likewise, we decline to address Lawson's argument regarding the cumulative error doctrine because the cumulative error doctrine does not warrant reversal where this court finds that there has been no error. Lawson also appears to make an equal protection argument based on membership in a suspect class as "black and male." SAG at 30. But he fails to inform this court as to the nature and occurrence of the alleged error. RAP 10.10(c).

In *Silva*, Silva did not have physical access to a law library; rather, he was given copies of cases and legal publications he requested by citation. 107 Wn. App. at 623. The trial court did not assign Silva an investigator, nor was he always given advance notice to prepare for interviews. *Silva*, 107 Wn. App. at 624. Contrary to Silva's assertion that the State provided insufficient recourses, Division One of this court found that Silva's access to legal material, pencils and paper, copying services, inmate's telephone, ability to serve subpoenas through the sheriff's office, witness interviews, and postage, among other things, constituted reasonable tools necessary to prepare a meaningful pro se defense. *Silva*, 107 Wn. App. at 625-26.

Here, Lawson opted to represent himself notwithstanding the trial court's suggestion to the contrary. Lawson was then appointed an investigator to arrange and conduct interviews, which the prosecutor expressly stated would be accommodated and made available at the State's office. The trial court granted continuances to allow Lawson to prepare. Lawson was provided with copies of the State's exhibits, with pencils, paper, access to the jail law library, the inmate's telephone, the use of the sheriff's office to serve subpoenas, and to postage. Accordingly, as in *Silva*, Lawson was provided with the tools that our State constitution requires as necessary to prepare a meaningful pro se defense. 107 Wn. App. at 625-26. Lawson's claim fails.

## B. BURGLARY STATUTE

### 1. OVERBREADTH

Lawson argues that the burglary statutes under which he was convicted are unconstitutionally overbroad and are also void for vagueness. Regarding his claim that ch. 9A.52 RCW is overbroad, Lawson asserts that the statute effectively criminalized his lawful protest against the City of Bremerton for its "deprivation of his property right to water." SAG at 25.

30

Lawson argues further that the statute is overbroad because it is not unlawful for a member of the public to use restroom facilities designated for the opposite sex.

We review de novo a trial court's interpretation of constitutional provisions and legislative enactments. *State v. Immelt*, 173 Wn.2d 1, 6, 267 P.3d 305 (2011). Generally, legislative enactments are presumed to be constitutional. *Immelt*, 173 Wn.2d at 6. "'A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities.'" *State v. Bradford*, 175 Wn. App. 912, 922, 308 P.3d 736 (2013) (quoting *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989)), *review denied*, 179 Wn.2d 1010 (2014).

But the statute, by its own language, is not unconstitutionally overbroad because it necessarily exempts lawful conduct and the First Amendment does not purport to protect criminal activity. To be guilty of burglary in any degree, a person must (1) *unlawfully* enter or remain, (2) with the intent to commit a *crime*, (3) against a person or property. Lawson's argument is unavailing because if his version of the events were believed, the State could not have proved the elements of a burglary beyond a reasonable doubt. Regardless of the legality of using a restroom meant for members of the opposite sex, Lawson would not have been guilty of burglary had he entered the women's restroom for the purpose of a constitutionally protected, lawful demonstration of some kind. Instead, the State's evidence showed that Lawson entered the women's restrooms with the intent to commit voyeurism, which is not constitutionally protected free speech or conduct. Lawson's claim fails.

2. VAGUENESS

Lawson contends that the burglary statute was unconstitutionally vague. But Lawson makes no argument related to principles of vagueness. Instead, he argues that proof of intent to

31

No. 44744-4-II

commit a crime does not establish unlawful entry and vice versa. Lawson fails to inform this court as to the nature and occurrence of his vagueness challenge. RAP 10.10(c).

C. "VINDICTIVE PROSECUTION"

Lawson contends that the State engaged in "vindictive" prosecution because the State applied different "charging standards" to him as it did to other "similarly situated" criminal defendants in Kitsap County. SAG at 9. Lawson suggests that the State's decision to prosecute him in this manner, because he is African American and because he is a male, signifies the "re-emergence of unconstitutional 'Jim Crow' laws." SAG at 9.

But Lawson cites no authority to support the proposition that the State must consider "similarly situated" criminal defendants when it determines which crimes it will charge. Most importantly, there is no evidence nor are there facts existing in the record to support this contention or any contention that the State engaged in racial or gender discrimination by charging him as it did. And if a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition (PRP). *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We hold Lawson's claim fails for this reason.

D. INEFFECTIVE ASSISTANCE OF COUNSEL

Lawson argues that he received ineffective assistance of counsel during the portion of the proceedings where he was represented because his appointed counsel failed to sufficiently investigate Lawson's case, resulting in lost access to exculpatory evidence, and because counsel failed to request the presence of witnesses at the ER 404(b) hearing.

32

Lawson offers no authority to support his claim that witnesses must be present during a pretrial hearing regarding the admissibility of ER 404(b) evidence. Furthermore, whether Lawson's appointed counsel sufficiently investigated his case again relies on evidence and facts outside the record before this court. Accordingly, this issue is properly raised in a PRP. *McFarland*, 127 Wn.2d at 335.

## E. PROSECUTORIAL MISCONDUCT

Lawson appears to contend that the State committed prosecutorial misconduct because the State presented false and misleading evidence of sexual impropriety and because the prosecutor committed misconduct in closing argument by suggesting to the jury that Lawson was witnessed "touching himself in front of an 11-year old girl." SAG at 32. We hold that no misconduct occurred because the "false evidence" was witness testimony and the State merely mentioned the same testimony in closing argument.

To establish prosecutorial misconduct, Lawson has the burden of establishing that the challenged conduct was both improper and prejudicial. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). If a defendant fails to object to misconduct at trial, he fails to preserve the issue unless he establishes that the misconduct was so flagrant and ill-intentioned that it caused an enduring prejudice that could not have been cured with an instruction to the jury. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remark. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

Here, the "false and misleading" evidence to which Lawson refers appears to be testimony from R.A.-B., the victim of the Seattle church incident. R.A.-B. testified that she saw Lawson in

No. 44744-4-II

the adjacent stall with his pants down, "kind of touching [himself]." 2 RP at 165. Lawson contests the veracity of this testimony because R.A.-B. stated that she only saw Lawson pulling his pants up during a defense interview related to that case. But the fact that R.A.-B.'s testimony during Lawson's trial was not identical to statements she made years earlier does not mean that her statements were untrue. Even were that the case, Lawson fails to show how perjury by a witness would support a prosecutorial misconduct claim. R.A.-B. testified under oath. There is nothing in the record to suggest the State presented "false evidence."

Lawson also claims for the first time on appeal that the State committed prosecutorial misconduct in closing argument when the prosecutor said, "And in the prior cases, he's viewing little girls in the women's restroom . . . and he's touching himself." 4 RP at 586. Lawson argues that these are "material misstatements." But Lawson failed to object below and his claim fails because the prosecutor did not make any improper argument. The evidence demonstrated that Lawson did view two young girls while in the women's restroom on one occasion. And, as mentioned, there was testimony that he had been seen touching himself. Lawson's prosecutorial misconduct claim fails.

Affirmed.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MAXA, J.

34